[Crim. No. 1740. In Bank.—August 6, 1912.]

# THE PEOPLE, Respondent, v. EDWARD DELHANTIE, Appellant.

CRIMINAL LAW—INVESTIGATION BY GRAND JURY—APPOINTMENT OF STENOGRAPHIC REPORTER—ANY COMPETENT PERSON MAY BE APPOINTED.—Under section 925 of the Penal Code, the grand jury, when criminal causes are being investigated before them, is authorized to appoint as stenographic reporter any competent stenographer. It is not essential that the one selected be the official reporter of the superior court, and sections 270 and 271 of the Code of Civil Procedure have no application to such an appointment.

ID.—IRREGULARITY IN APPOINTMENT AND IN SERVING DEFENDANT WITH TESTIMONY—OBJECTION CANNOT BE TAKEN ON MOTION TO SET ASIDE INDICTMENT OR IN ARREST OF JUDGMENT.—Objections that no copy of the testimony taken before the grand jury was served on the defendant within the time required by section 925 of the Penal Code, and that the grand jury never caused the person appointed as stenographic reporter to transcribe such testimony, are not available on a motion to set aside an indictment or on a motion in arrest of judgment.

ID.—IRREGULARITIES NOT AFFECTING JURISDICTION OF COURT.—The failure to observe the requirements of section 925 of the Penal Code respecting the appointment of a stenographic reporter by the grand jury, the reporting and transcription of the testimony, and the giving of a copy of the testimony to the defendant indicted within a certain time, does not affect the jurisdiction of the superior court to try the defendant under the indictment found.

ID.—FURNISHING DEFENDANT WITH TESTIMONY BEFORE GRAND JURY—OBJECT OF STATUTE REQUIRING.—The object of the provision of section 925 of the Penal Code, requiring a longhand copy of the testimony taken before the grand jury to be furnished the defendant "within five days after the discharge of the grand jury, or if the grand jury has not been discharged, at least five days before the cause is set for trial," is to enable him to know the testimony upon which the charge against him is founded, and to enable him to make his defense.

ID.—TIME FOR FURNISHING TESTIMONY—DIRECTORY PROVISION OF STATUTE—SUFFICIENT TIME TO PREPARE DEFENSE.—Such specification as to time is directory merely, and if the defendant is served with a copy of the testimony within a reasonable time and early enough to enable him to properly make his defense, the failure to comply literally with the terms of the statute is without prejudice to the defendant, and he cannot be heard to complain thereof.

Id.—Discharge of Grand Jury—Reporter's Duties not Terminated by.—The powers and duties of the reporter appointed by the grand jury did not end with the discharge of that body. The statute expressly made it his duty to transcribe the testimony in all cases where an indictment is returned, and contemplates that in some cases it would necessarily be done after the grand jury had adjourned.

Id.—Sufficiency of Indictment for Murder.—An indictment charging that the defendant, at a specified time and place, "willfully, unlawfully, feloniously, and of his malice aforethought, did kill and murder one William Kaufman, a human being, contrary to the form, force and effect of the statute in such cases made and provided and against the peace and dignity of the people of the state of California," sufficiently charges the crime of murder for all the purposes of an indictment.

Id.—Defendant Witness in Own Behalf—Cross-examination—Mere Asking of Question not Prejudicial.—On a prosecution for such murder, where the defendant on his direct examination had testified that he did not remember anything about an attack made by him on the deceased and a third person, it is held, that it was proper on cross-examination to ask him if he did not remember laying in wait in an alley for the latter person. Even if such question was not proper cross-examination, the mere asking of it, in the absence of an answer thereto, will not be deemed prejudicial.

Id.—Question Assuming Fact not Shown—Answer Rendering Question Unprejudicial.—The defendant was not prejudiced by being asked the question whether when he had stabbed the deceased and knew he was dead, he remembered leaving, although it improperly assumed that the defendant knew that the deceased was dead, if he answered substantially that he had no recollection of any of such things.

Id.—Argument of District Attorney—Defense of Insanity.—It is held, in view of the instructions, that the defendant was not prejudiced by remarks made by the district attorney in his argument regarding the defense of insanity.

Id.—Expert Witnesses on Insanity—Sufficient Opportunity for Observation.—Where medical witnesses, competent as experts on insanity, had officiated as commissioners on an examination of the defendant for insanity, one of them having also had him under observation for an hour or more a few days prior thereto, their opportunity for examination and observation was sufficient to warrant the court in allowing their opinions as to the sanity or insanity of the defendant at the time of the examination to be given in evidence.

Id.—Intimate Acquaintance—Warden of State Prison Having Custody of Defendant.—A warden of a state prison, who had had the defendant in custody for three years next preceding the homicide, and had conversed with and observed him during that period, was

qualified, as an "intimate acquaintance" of the defendant, within the meaning of subdivision 10 of section 1870 of the Code of Civil Procedure, to give his opinion as to his mental sanity.

ID.—IMMATERIAL QUESTION ASKED WARDEN NOT PREJUDICIAL.—A question asked the warden, whether the deceased, who was killed while confined in prison, had the reputation while there of being a busybody, although immaterial, was without prejudice to the defendant.

APPEAL from a judgment of the Superior Court of Marin County. E. T. Zook, Judge.

The facts are stated in the opinion of the court.

George H. Harlan, for Appellant.

U. S. Webb, Attorney-General, and J. H. Riordan, for Respondent.

ANGELLOTTI, J.—The defendant was charged by the grand jury of Marin County, by indictment presented in the superior court on March 1, 1912, with the crime of murder, alleged to have been committed in said county on February 16, 1912. His trial in the superior court was commenced on April 8, 1912, and resulted on April 11, 1912, in a verdict of "guilty of a felony, namely, murder in the first degree." On April 15, 1912, judgment of death was pronounced. This is an appeal by defendant from such judgment.

1. When the matter was under investigation by the grand jury, that body appointed one F. O. Sirard as a reporter to report the testimony taken. Mr. Sirard was present as such reporter during the taking of the testimony by the grand jury, and took down such testimony in shorthand. The grand jury presented the indictment in this case on March 1, 1912, and on the same day was finally discharged by the court from further attendance. Mr. Sirard failed to certify as correct or present any longhand transcript of such testimony until March 8, 1912, and no copy of the same was served on defendant prior to said day. It further appeared that such testimony was not transcribed before the discharge of the grand jury.

Section 925 of the Penal Code, provides in part, as follows: "The grand jury, on the demand of the district attorney,

whenever criminal causes are being investigated before them, must appoint a competent stenographic reporter to be sworn and to report the testimony that may be given in such causes in shorthand, and to transcribe the same in all cases where an indictment is returned. If an indictment has been found against a defendant, a copy of the testimony given in his case before the grand jury, shall be served upon him within five days after the discharge of the grand jury, or if the grand jury has not been discharged, at least five days before the cause is set for trial. . . . No person other than those specified in this and the succeeding section is permitted to be present during the session of the grand jury, except the members and witnesses actually under examination. . . ."

It is not claimed that a copy of the testimony was not served upon the defendant in ample time to enable him to prepare for trial, or that he suffered any prejudice whatever from the failure to serve him with such copy within five days after the discharge of the grand jury.

Based upon the facts we have stated, a motion was made to set aside the indictment on the ground that it was not found, indorsed, and presented as prescribed in the Penal Code, in that (1) no copy of the testimony was served on defendant within five days after the adjournment of the grand jury, (2) that the grand jury never caused the person appointed as stenographic reporter to transcribe such testimony, (3) that the testimony was not taken down by an official reporter qualified or appointed as required by sections 269, 270, and 271, of the Code of Civil Procedure, and (4) that a person was permitted to be present during the session of the grand jury and when the charge embraced in the indictment was under consideration, other than as provided in section 925 of the Penal Code, viz., said F. O. Sirard. The last specification is based entirely on the claim that Mr. Sirard was not such a person as could be appointed by the grand jury as reporter, for of course the "competent stenographic reporter" who may be appointed under the provisions of section 925 of the Penal Code, and is in fact appointed and sworn, is one of the persons specified in that section who may be present. There is nothing to indicate that Mr. Sirard was not "a competent stenographic reporter," and the section authorizes the selection by the grand jury of *any* competent stenographer.

It is not essential that the one selected be the official reporter of the superior court, and sections 270 and 271 of the Code of Civil Procedure have no application. What we have said disposes of the third, as well as the last specification. The other two specifications have nothing to do with the matter of the finding, indictment, and presentation of the indictment, and are not available on a motion to set aside an indictment. (Pen. Code, sec. 995.) The motion to set aside the indictment was properly denied. Similar objections were made on a motion in arrest of judgment, but they were not available thereon. (Pen. Code, sec. 1185.)

It is insisted that by reason of the facts we have stated, the superior court was without jurisdiction to proceed with the trial of defendant upon this indictment. We are unable to perceive any merit in this claim. The *jurisdiction* of the superior court was not dependent upon compliance with the provisions of section 925 of the Penal Code. It obtained jurisdiction of the cause for all purposes by reason of the presentation by the grand jury of the indictment charging defendant with the crime of murder alleged to have been committed in Marin County. If any substantial right given defendant by section 925 of the Penal Code was denied him, it could amount at most simply to error, reviewable in such manner as the law provides.

The only right given to an indicted defendant by this section so far as the testimony taken before the grand jury is concerned, is, where the testimony has been taken down in shorthand on the demand of the district attorney, to have a longhand copy thereof furnished him "within five days after the discharge of the grand jury, or if the grand jury has not been discharged, at least five days before the cause is set for trial." The manifest object of this provision is to enable him to know the testimony upon which the charge against him is founded and to enable him to make his defense. We have no doubt that, as has been held several times with relation to subdivision 5 of section 869 of the Penal Code requiring the shorthand reporter at a preliminary examination within ten days after the close of such examination to transcribe into longhand his shorthand notes and certify and file the same with the county clerk, that the specification as to time is directory merely (see *People* v. *Buckley,* 143 Cal. 375, 381, [78

Pac. 169], and cases there cited), and that if the defendant is served with a copy of the testimony within a reasonable time and early enough to enable him to properly make such defense as he has to the matters shown thereby, he cannot be heard to complain of the failure to comply literally with the terms of the statute. In such event such noncompliance is absolutely without prejudice to the defendant. As we have said, it is not even suggested that a true copy of the testimony given before the grand jury was not in fact served upon defendant in ample time to enable him to make such defense as he had.

There is nothing in the claim that all powers and duties of the reporter appointed by the grand jury end with the discharge of that body. The law by express provisions defines the duties of one so appointed, among which is the duty to transcribe the testimony in all cases where an indictment is returned. There is nothing in the law requiring this to be done during the life of the grand jury that appointed him, and it is manifest from the language used that it was contemplated that in some cases it would necessarily be done after that body had adjourned. The appointment of the reporter vests him with the power and makes it his duty to make and furnish this transcription, even though the body that appointed him has been finally discharged, and when he makes and certifies the transcription he does it as the officer or agent upon whom the law has devolved that duty, regardless of whether or not the grand jury has been discharged.

It follows from what we have said that there was no error whatever on the part of the trial court in this matter and that the failure to serve defendant with a copy of the testimony within five days after the adjournment of the grand jury does not warrant a reversal.

2. The indictment charged that the defendant, on the sixteenth day of February, 1912, at and in the County of Marin, state of California, willfully, unlawfully, feloniously, and of his malice aforethought, did kill and murder one William Kaufman, a human being, contrary to the form, force, and effect of the statute in such case made and provided and against the peace and dignity of the people of the state of California. That such language sufficiently charges the crime of murder for all the purposes of an indictment or informa-

tion is too well settled in this state to require discussion. (See *People* v. *Suesser*, 142 Cal. 354, [75 Pac. 1093], and cases there cited; *People* v. *Hyndman*, 99 Cal. 1, [33 Pac. 782], and cases there cited.)    The trial court therefore did not err in overruling the demurrer and the motion in arrest of judgment.

3. On cross-examination of the defendant, he having testified substantially on direct examination that he did not remember anything about having attacked either Peterson or the deceased during the morning of February 16th, the district attorney asked him various questions as to his want of recollection, among others, "You don't remember laying in wait in that alley for Mr. Peterson?" This was assigned as error by counsel for defendant, the claim being that there was no evidence to show lying in wait on the part of defendant, and therefore nothing to warrant such a question. The trial court thought it was proper cross-examination, and a careful reading of the testimony theretofore given satisfies us that the court was correct in its conclusion. Nor are we able to see that the question was such as to warrant us in holding that the defendant was prejudiced by the asking thereof, even if it were not proper cross-examination. The question does not appear to have been answered.

The defendant could not have been prejudiced by the asking of the question "And then when you had stabbed him (Kaufman) and knew he was a dead one, you do not remember leaving, you do not remember that?" The only objection made on account of this question was that it improperly assumed that defendant knew that Kaufman was dead. The defendant answered substantially that he had no recollection of any of these things.

If we assume that the district attorney exceeded the bounds of legitimate argument in the few words he said regarding the defense of insanity, which we do not at all concede, it is very clear to us that it cannot be held, especially in view of the instructions of the court in regard to such defense, that the defendant was at all prejudiced thereby.

4. Two physicians, Dr. Miller and Dr. Hayden, were allowed to testify substantially that in their opinion the defendant was sane on January 30, 1909. The only objection to Dr. Miller's testimony was that his period of observation was too

short to enable him to form an opinion, and the objection to Dr. Hayden's testimony was that no proper foundation had been laid. The competency of Dr. Miller as an expert on insanity was not questioned by the objection to his testimony, and such competency was fully shown by the evidence as to both witnesses. Each of these witnesses had officiated as a commissioner on an examination of defendant for insanity in Fresno County, which was had on January 30, 1909, and the knowledge of each as to defendant was acquired at that time, except that Dr. Miller also had defendant under his observation for an hour or more six days prior to such examination. We think that the evidence shows a sufficient opportunity for examination and observation on the part of the witnesses to warrant the court in allowing their opinions as to sanity or insanity of defendant on January 30, 1909, to go to the jury.

5. Warden Hoyle had the custody of defendant in the California state prison at San Quentin for something like three years next preceding the date of the homicide, and the evidence as to his observation of him, and his conversations with him during this period were such as to support the conclusion of the trial court that he was sufficiently "an intimate acquaintance" of defendant, within the meaning of that term as used in subdivision 10 of section 1870 of the Code of Civil Procedure to give his opinion as to his mental sanity. No other objection was made to his testimony on this subject.

6. The question whether the deceased, Kaufman, had the reputation in the prison of being a busybody, was, of course, absolutely immaterial to any issue involved on the trial of this case. No objection on this ground, however, was interposed on the trial to the question asked Warden Hoyle in this regard. In asking the question, the district attorney was undoubtedly seeking to rebut certain immaterial testimony on the part of witnesses for the defendant to the effect that deceased was both a "stool-pigeon" and a trouble-maker. We are of the opinion that there was no error in overruling the specific objection made, viz., that no proper foundation for the question had been laid, and that it had not been shown that the warden had any knowledge on the subject. But in any event it is clear that the whole matter was of very small importance and without prejudice to defendant's cause.

No other point is made for reversal. We have considered the whole record, and find no reason to doubt that the defendant had a fair trial on the merits, and that the judgment should be affirmed.

The judgment is affirmed.

Shaw, J., Lorigan, J., Henshaw, J., Sloss, J., and Melvin, J., concurred.