[Cr. A. No. 654.   Appellate Department, Superior Court, Los Angeles County.—July 23, 1931.]

THE PEOPLE, Respondent, v. JACOB ROSENBLOOM, Appellant.

(1 Cal. Supp. 182.)

Hugh L. Dickson, Frank P. Doherty and William R. Gallagher for Appellant.

Charles P. Johnson, City Prosecutor, and Joe W. Matherly and John L. Bland, Deputies City Prosecutor, for Respondent.

YANKWICH, J., *pro tem.*—The defendant appeals from a judgment of conviction of violation of the Pure Drugs Act of 1907 (Deering's General Laws, 1923 ed., Act 58).

The complaint alleged that the defendant did, on March 23, 1931, "sell and offer for sale and hold out for sale and offer to deliver a drug, to-wit: extract of ginger Superior Brand, which was then and there mislabelled and mis-branded". It is contended that the complaint does not state an offense. Sections 5 and 6 of the act describe several distinct acts by way of definition of the terms "mis-labelled or misbranded", and section 1 provides that "any person who shall . . . sell, or offer for sale, or keep for sale, . . . any such adulterated, mislabelled or misbranded drug, shall be guilty of a misdemeanor". From the evidence in the case, it appears that the misbranding here involved is that denounced by section 5, which declares an article to be misbranded "the package or label of which shall bear any statement, design or device, regarding such article or the ingredients or substances contained therein which shall be false or misleading in any particular".

It is elementary that where a statute denounces a series of acts, each of which separately and all together, constitute an offense, an indictment or information is sufficient which charges all the acts denounced by the statute, and may be supported by proof in the record which shows the commission of *one* of the series of acts. (*People* v. *McClennegen,* 195 Cal. 445, 452 [234 Pac. 91]; *People* v. *Welch,* 89 Cal. App. 18 [264 Pac. 324].) However, here the complaint described the offense by using terms defined in the statute, without specifying the particular act of mislabeling or misbranding. It has been held in California that charging a statutory offense in the language of the statute without designating the means, is, at most, a defect of form. (*People* v. *Cronin,* 34 Cal. 191; *People* v. *Welton,* 190 Cal. 236, 240 [211 Pac. 802].) However, there is authority in the federal courts, under the federal Pure Food Law, to the effect that the failure to specify the particular act of misbranding of which the defendant was guilty is a defect of substance, justifying the court in sustaining a demurrer to the evidence. (*United States* v. *St. Louis Coffee & Spice Mills,* 189 Fed. 191.)

There is no demurrer to a complaint provided for in criminal procedure in municipal courts. "Any substantial *defect in the* complaint" is, however, made a ground for arrest of judgment. (Pen. Code, sec. 1452.) The use

of a limiting adjective here implies, of course, that there may be defects to which the section does not apply, but its proper construction is a matter of some difficulty. In the superior courts any defect which would be ground for a general or special demurrer is available on motion in arrest of judgment, Penal Code, sec. 1004; *People* v. *Welton,* 190 Cal. 236 [211 Pac. 802]; but defects which are ground merely for a special demurrer are not so available unless they are first objected to by demurrer. Such minor defects, consisting in the absence of that particularity which, in view of the peculiar nature of the offense, might be necessary in order to enable the defendants to prepare properly for and make their defense, are not defects of substance, but of form. (*People* v. *Welton, supra,* at p. 240.) In the justices' and municipal courts, since no provision is made for a demurrer, and the motion in arrest of judgment is limited to substantial defects, there appears to be no mode by which a defendant can take advantage of defects of form; that is, he is in the same position as a defendant in the superior court who has failed to demur. But nicety of pleading is not exacted in justices' courts (*Matter of Winston,* 160 Cal. 18, 21 [116 Pac. 390]), and since the practice in the municipal courts, in criminal cases, is the same as that of justices' courts (Pen. Code, sec. 1461a), this rule should apply to the municipal courts also. ■ By section 1426 of the Penal Code, a complaint in the justices' (and municipal) courts is sufficient if it sets forth "the offense charged, with such particulars of time, place, person and property as to enable the defendant to understand distinctly the character of the offense complained of and to answer the complaint". The sufficiency of a complaint in a justice's (or municipal) court must be tested by this section, not by section 950 (*Matter of Winston, supra,* at p. 20), and if it is lacking in any matter required by section 1426 it may be regarded as defective in substance.

In the Winston case it was held that a complaint which discloses the character of the offense charged (battery) and charges it in the words of the statute, is sufficient on *habeas corpus,* though it says nothing as to the particular acts of force and violence. The court also declared that cases holding that a defendant is entitled to have the charge against him set forth with sufficient particularity to enable

him to plead an acquittal or conviction in bar of a subsequent prosecution were all cases where the question arose on special demurrer and that such particularity is not a jurisdictional matter, since the identity of offenses can be determined otherwise. Since there is no provision for special demurrer in the justices' (or municipal) courts, or other mode of objecting to defects in form, a defendant is not entitled, in those courts, to insist upon particularity in the respect here mentioned.

The defect in the present case is not a total absence of a necessary averment; that is supplied, though by way of conclusion, by the allegation that the ginger was mislabeled and misbranded. The uncertainty arises from the failure to state of what the misleading or misbranding consisted. We are of the view that the complaint sets forth the offense with such particulars as to enable the defendant to understand distinctly the character of the offense and to answer the complaint. Since the question may be raised only after trial, the proceedings at the trial may be given consideration in determining this matter and they fail to show that the defect in the complaint in any way prejudiced defendant in making his defense.

A motion in arrest of judgment can be made only upon the grounds specified in the code. None others are available. (*People* v. *Bawden*, 90 Cal. 195 [27 Pac. 204]; *People* v. *Gardner*, 98 Cal. 127 [32 Pac. 880].) *People* v. *Chaves*, 122 Cal. 134, 143 [54 Pac. 596]; *People* v. *Delhantie*, 163 Cal. 461 [125 Pac. 1066].) It was decided in an early case (*People* v. *Dick*, 37 Cal. 277), which has never been questioned or overruled, that the particulars of the insufficiency of the pleading must be specifically pointed out in the motion. Otherwise, the point will not be considered on appeal. See *People* v. *Sansome*, 98 Cal. 235, 239 [33 Pac. 202]. The necessity for pointing out the particulars of insufficiency is much more apparent in cases arising in municipal courts, because no provision is made for a demurrer, either general or special. And it is not quite consonant with fairness and fundamental justice to allow the defendant to pass unnoticed or to overlook deliberately a defect in the complaint, which is *not* jurisdictional, and permit him to spring it for the first time on appeal.

Even if we assume, therefore, that the complaint is defective in a matter of substance, for failing to specify with which of the kinds of misbranding denounced by the statute the defendant is charged, the error cannot be considered here, because the record before us, while stating that a motion in arrest of judgment was made, *does not state the grounds of the motion.* We do not even know whether *the insufficiency of the* complaint was one of them. For all we know, counsel for the defendant may have urged some other grounds which are not even sanctioned by the code. In view of the strict interpretation which our courts have placed upon the motion, the failure of the record to disclose as ground of the motion in arrest of judgment the particular ground urged here, is fatal to its consideration by this court. We may add that, by being compelled to stand trial upon a complaint which lacks the required particulars, the defendant is in no worse situation than if the complaint had charged all the kinds of misbranding and mislabeling denounced by the act. In that event, as already stated, the conviction would depend (and could be supported) upon proof in the record of guilt as to any *one* of these species of misbranding and mislabeling. In neither case would the defendant know until the trial the particular act of the series with which he is charged. In the last analysis, therefore, the hardship, if any, is not different when he is compelled to plead to a complaint which (without particularizing) charges him with an offense which is designated by a statutory name, than when he is required to plead to a complaint which charges him with a series of acts.

The evidence of misbranding is clear. The labels on the bottles contained the words, "pure fluid extract of ginger" and "U. S. P." This was a representation that no ingredients were contained in the contents of the bottles other than those which properly belonged in fluid extract of ginger, and that it conformed to the standards of the United States Pharmacopeia. The falsity of this claim on the label could be shown by proof that any other ingredient was contained in the contents, or that they did not come up to the U. S. P. standards. Of course, such evidence might have a tendency to show, also, that the ginger was adulterated. But it does not follow that the conviction was based on a showing of adulteration only. A drug is adul-

terated under section 4 of the act if, when sold under or by a name recognized in the United States Pharmacopeia, it differs from the standard of strength, quality or purity laid down therein, or if the strength or purity fall below the professed standard or quality under which it is sold. The question of adulteration does not, therefore, concern itself with the label. The representation as to quality or character required on a charge of adulteration may be made orally, by letter, or in many ways other than by label. On the other hand, if the label is false or misleading the drug may be misbranded though nothing is said about it or the label is not shown to or read by the purchaser.

In this case the evidence is clear that the ginger did not conform to the standard set by the U. S. Pharmacopeia. The label was therefore false in this respect. There was also evidence tending to show that it contained a poison which would not be in pure extract of ginger. Hence the statement on the label that the ginger was ''pure'' was also false. These falsehoods on the label in relation to the article contained in the bottles and the ingredients thereof constituted a misbranding.

The defendant sold the ginger to pharmacists, and several paralytics, who had purchased the product from a druggist to whom the defendant sold it, were allowed to testify to the fact that they became paralyzed as a result of drinking the ginger. It is insisted that this was error, because there was no charge of adulteration and the testimony on behalf of the People showed that paralysis would result only from the presence in the ginger of the poison known as triorthocresylphosphate, and that none was found in the remnants of the ginger sold by the defendant, upon test. The absence of the poison, if it were a positive fact proved, might, at first blush, make the admission of testimony as to the effect of the drinking of the ginger appear erroneous. However, the evidence on the subject is purely negative. There is no showing that any chemical test was made to find the poison. Dr. F. G. Crandall, a witness for the prosecution, who testified to the effect upon drinkers of the presence of this poison, who asked: ''Now, *so far as you know,* there is no phosphate, that long name, found in it?'' He answered, ''No, sir, none found in the particular sample Mr. Abernathy tested.'' Abernathy was the chemist

who had analyzed the sample. The sole object of his analysis was to determine compliance with United States Pharmacopeia. He testified that the product was substandard. It is evident that the absence of the poison was *merely assumed* by Dr. Crandall from the fact that Abernathy's analysis made no mention of it. Moreover, on cross-examination, by the defendant's own counsel, Dr. Crandall stated that, but for the presence of the poison the men would not have become paralyzed. The testimony was, therefore, admissible as a means of showing that the ginger was mislabeled not only because it did not conform to the United States Pharmacopeia and was substandard, as disclosed by analysis, but also because, although labeled as ginger, it also contained other substances, including this poison, as disclosed by the effect on the drinkers, which had no place in extract of ginger. It is true that the witness also testified that the victims, might have become paralyzed even if they had drunk unadulterated ginger. But, on appeal, we must disregard the contradiction and assume that the jury believed the statement which makes the testimony admissible. In this view of the evidence, the presence of the poison could be proved by the effect of the ginger upon the persons who drank it. ▮▮▮ Such evidence would show misbranding. And it being admissible for that purpose, the evidence was not rendered inadmissible by the mere fact that it also tended to prove adulteration. (*People* v. *Ciulla,* 44 Cal. App. 719, 722 [187 Pac. 46] ; *People* v. *Ball,* 102 Cal. App. 353, 357, 358 [282 Pac. 971].)

▮▮▮ Error is predicated upon the refusal of the court to receive in evidence the following letter:

"Columbus 8774

                              "Jordan Bros.
                              "1841 Broadway
                              "New York City.

                                          "Aug. 15, 1930.

"California Extract Co.,
     "Los Angeles, California.
"Gentlemen:
     "We have your letter of recent date and in reply beg to advise that we are not manufacturers of any of the products which we handle; we are jobbers of such items as

Imitation Extracts, Drug Sundries, Fluid Extract of Ginger Bitters, etc. We buy these products from the manufacturing of jobbing houses and in the case of extracts or any item which comes under the Pure Food and Drug Act or the Internal Revenue Dept. (Prohibition Unit) we always insist on a guarantee and naturally we can give you the same guarantee that we receive, which is as follows:

" 'Guarantee.

" 'We, the undersigned, do hereby guarantee that such merchandise as listed herein, namely, Imitation Flavoring Extracts, U. S. P. Preparations, Extracts, etc., as we are selling and shipping, are not adulterated or misbranded within the meaning of the Federal Food and Drug Act of June 30, 1906, as amended.'

"Naturally, if the merchandise complies with the Pure Food and Drug Act, it would comply with the Revenue Dept. restrictions, so we feel quite confident that you will be perfectly safe in selling our merchandise.

"Trusting to hear from you at some early future date, we are,

"Yours very truly,
"TOM JORDAN.
"JORDAN BROS."

The letter was offered as a guaranty under section 21 of the act. The refusal to receive it was based upon the ground that no proper foundation had been laid for its reception. The signature of the signer was not written in, but stamped. If this was a reply letter, the objection upon that ground was not valid. (*Fielding* v. *Iler,* 39 Cal. App. 559, 563 [179 Pac. 519]; note, 9 A. L. R. 990 et seq.) The presumption of genuineness of reply letters is indulged in even as to letters bearing typewritten or rubber stamp signatures. (*Barham* v. *Bank of Delight,* 94 Ark. 158 [27 L. R. A. (N. S.) 439, 126 S. W. 394]; *Lancaster* v. *Ames,* 103 Me. 87 [125 Am. St. Rep. 286, 17 L. R. A. (N. S.) 229, 68 Atl. 533]; *National Acc. Soc.* v. *Spiro,* 78 Fed. 774 [C. C. A. 6].) However, the letter was inadmissible under the rule as to reply letters, because of insufficient proof of the writing or contents and, more particularly, of the mailing of the letter to which it was said to be an answer. (*Kvale* v. *Keane,* 39 N. D. 560 [9 A. L. R.

972, 168 N. W. 74] ; *Consolidated Grocery* v. *Hammond,* 175 Fed. 641 [C. C. A. 5].)

The rule admitting reply letters depends in part on the presumption that matter deposited in the United States mail with the postage paid is delivered to the addressee, and in part on the internal evidence of the contents of the reply that it is an answer to a letter sent to the writer of the reply by the person who produces it. There can be no such internal evidence without a showing of the contents, or, at least, the subject matter of the first letter. Here the defendant testified merely that someone in his office wrote a letter "to the firm from which he bought the ginger", that he saw it before it went out, and that shortly thereafter he received the alleged guaranty. The evidence in the case of *Kvale* v. *Keane, supra,* was much stronger. And yet the court there held that the proper foundation as to mailing or receipt had not been laid for its introduction. It is to be borne in mind that the letter was offered as a guaranty from the manufacturer, which, under section 21 of the act, was a complete defense to the charge of misbranding, if believed by the jury. We feel that the nature of the document,—the force which the law gives to it,—should make us apply the rules just declared, if at all, with greater strictness, lest fraud be encouraged by a looser rule.

Several minor contentions may be disposed of briefly. We think the sample of ginger analyzed was sufficiently identified as coming from bottles bearing the brand of the defendant. The court's charge to the jury was, on the whole, adequate and fair. It consisted, in addition to the usual instructions as to the presumption of innocence, of the reading of the various sections of the act, *in haec verba.* The court even went so far as to read to the jury section 21 of the act, relating to the effect of a guaranty, although the written evidence of the guaranty was excluded. Thus the jury were given an opportunity to infer the existence of a guaranty from other testimony. The court properly instructed the jury that intent was immaterial. The offense is not one which requires a specific intent. (*People* v. *Dillon,* 199 Cal. 1, 7–9 [248 Pac. 230]; *United States* v. *Sprague,* 208 Fed. 419; *United States* v. *Thirty Six Bottles of London Dry Gin,* 210 Fed. 271).

In view of the conclusion reached that adulteration was one of the means of proving misbranding and mislabeling, we cannot say that the reading to the jury of the portions of the act which define adulteration was error. As the jurors could conclude that there had been a misbranding or mislabeling through failure to disclose the presence of ingredients which showed adulteration, a definition of adulteration under the act would aid them in determining the fact. Moreover, the record shows so conclusively the mislabeling, and facts from which one could readily infer that the ginger contained the poison which produced paralysis, that, on the basis of the whole record, we would be compelled to hold that any error in this or any other respect comes within the saving grace of section 4½ of article VI of the Constitution of California. (See *People* v. *Stefini,* 114 Cal. App. 530 [300 Pac. 112]; *People* v. *North,* 81 Cal. App. 113, 122 [252 Pac. 1063].)

The judgment and order are affirmed.

Shaw, Acting P. J., concurred.

Rehearing denied.