[Crim. No. 4501. Second Dist., Div. One. Mar. 6, 1951.]

THE PEOPLE, Respondent, v. HENRY G. HIDEN, Appellant.

Henry G. Hiden, in pro. per., and George E. Toner for Appellant.

Fred N. Howser, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

DRAPEAU, J.—In 1942 defendant was in the throes of inventing an attachment for a piano, which he called "Music-in-Color." The attachment was to project colors upon a screen, or upon the walls of a room. These colors would change with musical notes, as keys of a piano were struck.

Defendant met the complaining witness at the home of a mutual friend. He talked about no other subject than his invention; he was impecunious, and needed money to bring his brain child into the world.

The complaining witness was an elderly woman, whose husband and whose son were dead. She was trustee and executrix of the son's estate, for the benefit of her grandchildren. She had control of funds in the estate, and she had money of her own. She lived in San Francisco; defendant lived in Los Angeles. Many of the communications between defendant and the lady were by telephone between the two cities.

Defendant and the complaining witness made a verbal agreement. He was to perfect the invention; she was to finance him. When "Music-in-Color" became a financial success, she was to get back her money from the first profits; then she was to have one-half of the profits as they were to bourgeon through the years.

She first advanced defendant $3,000, to buy a piano. Later, she advanced him money from time to time as he told her he needed it. But no profits ever materialized.

In 1946 defendant found an old movie studio in Hollywood. He thought it would be just the place in which to demonstrate "Music-in-Color." The complaining witness came to Los Angeles from San Francisco to see the studio. And she thought so, too.

So they agreed, again verbally, to purchase the studio for $27,500. Deed was to be in her name. The lady furnished the money, partly from her own funds, and partly from money belonging to her deceased son's estate.

Then defendant found two vacant lots. He and the complaining witness thought they would be useful in conjunction with the studio. So, again verbally, they agreed to purchase the lots, the deed to be in the lady's name. Again the lady furnished the money, $12,500, partly from her own funds and partly from her son's estate.

Defendant took care of all of the details of these two purchases. He arranged for the escrows, and directed what was to be done. All the complaining witness did was to furnish the money, come to Los Angeles occasionally, and talk with defendant long-distance from time to time.

Then came the things which caused defendant to be charged with grand theft. Instead of having the deeds made in the name of the complaining witness, he caused title to be vested in him. Then he furnished a financial statement to a bank, representing that he owned the real estate, unencumbered. On the strength of this statement he established credit, and borrowed money from the bank on open notes—$1,000 at one time and $2,000 at another.

Defendant also borrowed money on the real property, giving notes secured by trust deeds to secure the loans.

When the complaining witness discovered what had been done, she had to pay off the trust deeds to save what was left of her money. This cost her approximately $14,000. In passing, it is to be said that she reimbursed her son's estate for the money she had taken out of it.

The bank lost most of the money it had loaned on the open notes.

Defendant was convicted by a jury of four counts of grand theft. Two of these counts involved the transactions with the bank, and two were for theft of the real property.

At the close of the People's case the court, on motion of the district attorney, reopened the case, and permitted an amendment to the information. The amendment added counts five and six, and charged defendant with taking the money— $27,500 and $12,500—rather than the real property described in counts four and five. Defendant was found not guilty of these two last counts. Also he admitted an old prior conviction and imprisonment for grand larceny (auto).

Defendant has filed briefs *in propria personam*. Counsel appeared at the request of this court, and argued for defendant.

Defendant testified to a plausible account of his relations with the complaining witness. Unfortunately for him, the jury did not believe him.

He said that the agreement was made substantially as she said it was; that she made advancements to him to perfect his invention; that she knew at all times that he had taken title to the real property in his name, to facilitate getting repairs and improvements made, when he was to deed it to her; that she knew he had established the credit with the bank and had mortgaged the real property; and that she knew he spent all of the money thus secured to perfect the invention, to remodel the old studio, and for his own personal expenses during the years. Also that when he borrowed the money from the bank, he told the president of the bank all about his agreement with the complaining witness, and explained why title to the real estate was in his name, but that the president decided to lend him the money anyway.

He further testified that he built a successful "Music-in-Color," and demonstrated it before a prominent woman's club, and educational authorities in Southern California.

Defendant's contentions on appeal are as follows:

(1) It was error to try him upon a charge presented by information. Under constitutional law he could only have been charged by indictment.

(2) It was error to permit the district attorney to add, at the close of the People's case, two new counts to the information, in addition to the four for which he was being tried.

(3) The evidence was insufficient to support defendant's conviction upon counts one and two.

(4) The evidence does not support defendant's conviction on counts three and four.

(5) The convictions on counts one and two are inconsistent with the convictions upon counts three and four.

(6) The convictions on counts three and four are inconsistent with the acquittals on counts five and six.

(7) Error in instructions given.

Defendant's first contention that his prosecution by information was contrary to constitutional guaranty of due process of law has been made many times in California. No necessity appears for any detailed exposition of the law. Nothing in the federal Constitution or the Constitution of California denies to this state the right to prosecute criminal cases by information. (*Wolf* v. *Colorado,* 338 U.S. 25 [69 S.Ct. 1359, 93 L.Ed. 1782]; *Hurtado* v. *California,* 110 U.S.

516 [4 S.Ct. 111, 292, 28 L.Ed. 232] ; *People* v. *Raffington*, 98 Cal.App.2d 455 [220 P.2d 967].)

Defendant's contentions of insufficiency of the evidence to support the counts of the information are answered if a theory of theft which will meet the test of reasonable doubt may be drawn from the evidence.

Penal Code, section 484, now amalgamates the crimes of larceny, embezzlement, false pretenses, and kindred crimes under the cognomen of theft. (*People* v. *Myers*, 206 Cal. 480 [275 P. 219] ; *People* v. *Cannon*, 77 Cal.App.2d 678 [176 P.2d 409].) Like charity, California's definition covers a multitude of sins. No longer need the legal profession puzzle over fine distinctions between embezzlement, larceny, and other elements of stealing. ■ The crime is complete if a man takes property not his own, with intent to take it.

This section of the Penal Code makes it a crime for any person "by any false or fraudulent representation or pretense" to "defraud any other person," and to "fraudulently appropriate property which has been entrusted to him."

■ The evidence establishes beyond a reasonable doubt that when defendant represented to the bank that he owned the real property, and thereby secured credit upon which he borrowed money he could never repay, he was guilty of theft.

■ The evidence also establishes that when defendant mortgaged real property which he did not own, and kept the money, again he was guilty of theft.

■ No prejudice to defendant appears from the amendment to the information, either at the time, or in the manner in which it was made. (Pen. Code, §§ 954, 1008.) The amendment did not change the offense charged, nor change an offense not shown on the preliminary examination. Following the theory adopted by the jury, defendant was quite properly acquitted of the two counts added to the information. ■ Therefore, no inconsistencies appear in the acquittal upon these two last counts. And the section (Pen. Code, § 1008) does not abridge any constitutional rights of defendants in criminal cases. (*People* v. *Roth*, 137 Cal.App. 592 [31 P.2d 813].)

Defendant presents two final contentions of error in instructions.

■ First he alleges error based upon the following instructions:

"You are instructed that the offense set forth in Count V is a different statement of the same offense as set forth in

Count III of the information and if you find the defendant guilty on one of these counts, you must find him not guilty of the other.

"Likewise, Count VI is a different statement of the same offense as set forth in Count IV of the information, and if you find the defendant guilty of one of these counts, you must find him not guilty of the other."

The jury was properly instructed that they could not find defendant guilty of both charges. Nothing was stated or implied which required a verdict of guilty of either or of any offense charged.

 Secondly, defendant alleges error in instructions relative to embezzlement and other elements of theft. In the circumstances of the case, the instructions relative to crimes embraced in the statute were proper. Indeed, a review of all the instructions demonstrates a fair and impartial present-ment to the jury of the law applicable to the case.

The judgments are affirmed.

White, P. J., and Hanson, J. pro tem., concurred.