[Crim. No. 5220. Second Dist., Div. Two. Nov. 23, 1955.]

THE PEOPLE, Respondent, v. ELMER R. PUGH, Appellant.

Morris Lavine for Appellant.

Edmund G. Brown, Attorney General, and Norman Sokolow, Deputy Attorney General, for Respondent.

McCOMB, Acting P. J.—From a judgment of guilty of grand theft after trial before a jury, defendant appeals. There are also appeals from the order denying a motion for a new trial, and "all proceedings had at the time of passing judgment and sentence."

*Facts*:* There are two parcels of real property involved in this case. The first, which will be hereinafter referred to as "the 304 acres," consists of 304 acres of desert land near Harper's Dry Lake in San Bernardino County, owned by Mr. Asher Goodrick, who had settled on the property, drilling one well sufficient for chicken raising and domestic use, and had obtained title to it by a United States patent in 1935.

The land was situated on the slope of a hill with a rise of 50 feet per mile. It was very sandy and, without water development, unsuitable for alfalfa farming. It had a market value of between $1.00 to $5.00 per acre in 1950.

The second parcel of land was a large rooming house hereinafter referred to as the "State Street property" located at 6200 State Street in Los Angeles County, owned by Mrs. Verna Harold. It had been purchased in 1949 for $15,750.

---

*The evidence is viewed in the light most favorable to the People (respondent) pursuant to the rules set forth in *People* v. *Pianezzi*, 42 Cal. App.2d 265, 269 [2] [108 P.2d 732] (hearing denied by the Supreme Court).

In July, 1950, Mr. and Mrs. Goodrick listed the 304 acres for sale with defendant, a licensed real estate broker, asking a price of $1,500. Defendant, unbeknown to the Goodricks, became interested in buying the property for himself and intended to put his son on the property to develop it. Defendant told Mr. Goodrick that he could not get more than $300 for it. To facilitate a deal he requested Mr. and Mrs. Goodrick to sign a paper, which they did. Mr. Goodrick had shown defendant, at his request, the 304 acres.

Thereafter, defendant told Mr. Goodrick that the deal had fallen through and purportedly returned the paper to Mr. Goodrick. In July, 1950, defendant informed the Goodricks that he had a purchaser, Mary Baker, who would pay $300, and an escrow was consummated at the Security-First National Bank, the Goodricks signing a deed to Mary Baker. Thereafter, the Goodricks received a check through the escrow for $300.

Mrs. Mary Baker, an elderly person, had previously sold some lots in Oklahoma through defendant. She then owned no property except a small interest in a plastics concern in which she worked as a bookkeeper. She was a person of limited means. Defendant contacted Mrs. Baker in July, 1950, and informed her that he had a deal she could profit by. He told her that he had for sale 304 acres of perfectly flat desert land worth $200 an acre; that he had seen the land and a vice-president of Richfield Oil Company owned the land next to it and paid $200 an acre for it; that this land was producing alfalfa; that he thought he could get the 304 acres for her for $200 down plus the expense of escrow of about $100; that there was a deed of trust in the sum of $15,000 that had to be cared for. Mrs. Baker told defendant she did not have any money and could not pay the trust deed. Defendant then told Mrs. Baker that he had two men in his office who wanted to lease the land and plant it to alfalfa, and he assured her these men would lease it as soon as she bought it, and that the rental on the land would more than pay off the trust deed.

Defendant took Mrs. Baker to the escrow department of the Security-First National Bank, where she signed a note to Lulu Brockman for $15,000, payable $5,000 in three years, $5,000 in five years and $5,000 in seven years. She also signed a trust deed to Lulu Brockman to secure the note against the 304 acres and paid $300 in cash. Lulu Brockman was the mother-in-law of defendant.

In 1949, Keith Harold, the son of Mrs. Verna Harold, bought the State Street property through defendant for $15,750, and in the fall of 1949 bought another house and lot through defendant who then promised to sell the State Street property without commission, and thereafter brought prospective purchasers to look at the property. Verna Harold paid off certain encumbrances on the State Street property and Keith Harold deeded this property to his mother with the understanding that when it was sold Mrs. Harold would be reimbursed with interest, and the balance of the proceeds would go to Keith Harold. Mrs. Opal Glover, the sister of Verna Harold, occupied the State Street property with Keith. They had also three roomers as tenants.

In August, 1950, defendant proposed an exchange of the $15,000 note and trust deed on the 304 desert acres, plus $500 cash, for the State Street property. Keith told defendant that his mother had the largest interest in the property and it was in her name, and that he would have to convey anything that defendant said to his mother to see whether she considered it satisfactory or not.

Defendant represented to Keith Harold that he had an old lady who had a trust deed on some alfalfa land (that is, the 304 acres) in San Bernardino, whom he thought might be interested in trading the land for the State Street property and would give in addition $500 cash; that Mary Baker, the maker of the note (which was secured by the trust deed) owned the alfalfa ranch very close to the 304 acres, and Mary Baker also owned several apartment houses, was an executive and part owner of a plastics concern, that with two sons-in-law she intended setting up in business to grow alfalfa seed on the 304 acres, and that the first payment was made payable in three years so that they might have time to raise at least one crop before the first installment became due; that Lulu Brockman was a widow and no longer had the ability to farm the land and therefore decided to sell it; that the land was worth $75 an acre, at least $50 an acre; that it had been farmed; that it was cleared, had two good wells on it, was perfectly level, and it had what he thought was a perfect slope for irrigation; and that the country all about it grew alfalfa. He also reported that Mary Baker had substantial assets.

Keith Harold wrote to his mother in effect repeating these representations to her. Verna Harold replied by letter to her son. Pursuant to this letter, Keith Harold told defendant

that his mother advised that if everything defendant had said was true, and if the deal looked all right to him it would be all right to put it in escrow.

The escrow was opened accordingly. Mrs. Verna Harold received by mail a deed which she signed, conveying the State Street property to Lulu Brockman. The deed was mailed to the escrow agent. Defendant paid $500 and produced into escrow an assignment of the note and trust deed on the 304 acres from Lulu Brockman to Verna Harold. On September 19, 1950, the deed was forwarded by the escrow agent to the Title Insurance and Trust Company, and it was directed to comply with escrow instructions to obtain insured titles and to record both deeds simultaneously.

On or shortly prior to October 2, 1950, the titles to the two properties were insured and the escrow agent ordered the recordation of the instruments, which were recorded October 3, 1950. Keith Harold and his aunt moved out of the State Street property about October 12, 1950, and delivered the keys to defendant.

Thereafter, the State Street property was transferred from Lulu Brockman to Mary Pugh, the daughter of defendant, who obtained a $6,500 loan upon it on November 9, 1950. Ultimately $10,000 of the proceeds of the sale of the property found its way into the bank account of defendant.

In July, 1953, Mrs. Verna Harold sent the note and trust deed on the 304 acres to a bank in Los Angeles for collection. Thereafter Keith Harold was contacted by an attorney for Mary Baker and went to defendant. Keith Harold told defendant of the facts he had learned and asked just who Lulu Brockman was. Defendant said, "I am Lulu Brockman."

Mary Baker was not aware that the 304 acres were unencumbered, that is, that the note and deed to Lulu Brockman were a new note and trust deed. Neither Keith Harold nor Mary Baker had seen the property prior to their entering the transaction relating to the 304 acres and the note and trust deed above described.

*Questions*: First: *Was the prosecution of the present action barred by the statute of limitations?*

*No.* Defendant urges that the three-year statute of limitations barred the prosecution of the present action, stating that the date (September 12, 1950) when Mrs. Verna B. Harold signed the deed transferring the State Street property to Lulu Brockman, with the intent to transfer the property, was the date the alleged offense occurred. Such date is not

controlling. The deed was recorded October 3, 1950, less than three years from the date of the filing of the information (September 29, 1953). The escrow officer acknowledged that this recording was in the course of the transaction pursuant to the instructions. In other words, the transaction was not deemed completed until recordation of the deed. Possession of the property was not in fact surrendered to defendant until subsequent to that date.

It is settled that where a grant in escrow is made upon conditions, such grant takes effect upon the performance of the conditions and upon delivery of the deed by the depositary to the grantee. (*In re Reed,* 204 Cal. 119, 123 [266 P. 948]; *Watts* v. *Mohr,* 86 Cal.App.2d 256, 262 [3] [194 P.2d 758].) The foregoing rules considered in connection with the rule that in a prosecution for obtaining property by false pretenses, the acquisition of the property is complete only upon possession and title being received by the defendant (*People* v. *Pillsbury,* 59 Cal.App.2d 107, 111 [1] [138 P.2d 320]; *cf. People* v. *Fawver,* 29 Cal.App.2d Supp. 775, 779 [77 P.2d 325]), makes it clear that the date of the commission of the offense was not prior to October 3, 1950, the date defendant obtained title to the property. Therefore the present proceeding was not barred by the statute of limitations.

Second: *Was there substantial evidence to support the judgment of guilty?*

*Yes.* (1) Defendant contends that Mrs. Harold got just what she bargained for, a trust deed note and some cash in exchange for the State Street property. This is not the fact.

The record discloses that she was defrauded by defendant who made representations to her son knowing that such representations were false and would be transmitted to Mrs. Harold and acted upon by her. Among other material misrepresentations made by defendant was the one that the maker of the note, Mary Baker, was a woman of means, and that the 304 acres which secured the trust deed was alfalfa land. By such representations Mrs. Harold was induced to part with the State Street property which had been purchased the year before for more than $15,000 and in return she received a note and trust deed secured by property worth no more than $1,500, and the maker of the note and trustor lacked financial assets sufficient to meet the obligation which she had assumed.

Even if property is worth the consideration paid

therefor, this is not a defense where there is substantial evidence, as in the present case, that defendant knowingly made false representations with the intent to defraud and with the purpose and effect of inducing the prosecuting witness to part with something of value. (*People* v. *Raines*, 66 Cal. App.2d 960, 962 [153 P.2d 424].)

*People* v. *Tufts*, 167 Cal. 266 [139 P. 78], relied on by defendant, is not here controlling. In such case it was held that a husband's untrue representation that he had power of attorney from his wife to transfer certain notes was immaterial if the transfer would be valid without the power of attorney. Such is clearly not the case here.

■ Testimony of defense witnesses also relied upon by defendant which was contradicted by prosecution witnesses must, of course, be disregarded on appeal. (See *People* v. *Frankfort*, 114 Cal.App.2d 680, 700 [28] [251 P.2d 401].)

(2) Defendant urges that there is no proof of false representation to Mrs. Verna Harold; that any alleged representation to her son was not transferable to her so as to constitute a false representation within the meaning of the statute; that her son was not the agent of defendant but was the agent of Mrs. Harold and therefore defendant was not bound by any letter from the son to his mother purportedly relaying defendant's representations.

This is contrary to the evidence. Keith Harold testified that defendant made certain representations to him respecting the purported trade; that he told defendant his mother had the largest interest in the State Street property and he would have to convey defendant's statements to his mother; that he subsequently told defendant he had conveyed defendant's statements to his mother and the latter had advised him that if everything was as defendant represented he should proceed with the escrow, and thereafter defendant initiated the escrow.

■ This evidence as to defendant making the representations to Keith Harold and his conveying the representations to his mother was proper, and falls within the rule that where a declaration is part of a transaction, which is the fact in dispute or evidence of that fact, such declaration is evidence as part of the transaction. (*Airola* v. *Gorham*, 56 Cal.App.2d 42, 50 et seq. [133 P.2d 78] ; Code Civ. Proc., § 1850.) ■ The rule is aptly stated in 22 American Jurisprudence (1939) 458 as follows:

". . . The rule is, moreover, that it is not necessary that the false representations be made to the person defrauded in order to convict one of obtaining money or property by false pretenses. A false representation to an agent or clerk has been held a false pretense to the principal. Likewise, one may be guilty of obtaining money under false pretenses where he makes his representations by means of an advertisement directed to the general public. . . ." (See also *People* v. *Green*, 22 Cal.App. 45, 50 [133 P. 334].)

 (3) Defendant contends that the evidence is insufficient for lack of corroboration under Penal Code, section 1110, providing that in a prosecution for obtaining property by false pretenses defendant cannot be convicted unless the false pretense was expressed in language accompanied by a false token or writing, or, among other things, that the pretense be proven by the testimony of two witnesses or of one witness and corroborating circumstances.

This argument is devoid of merit. The People's evidence showed that the 304 acres were unencumbered when owned by the Goodricks; that as far as the Goodricks were concerned the 304 acres were being sold by them to Mary Baker for the total consideration of $300. As far as Mary Baker was concerned, however, she was buying this property for a consideration of $15,300. The property was represented to her by defendant as being encumbered when in fact it had not been.

Defendant maintained that the Goodricks sold this property to him, and that he caused the trust deed to be placed on the property, with Lulu Brockman (his mother-in-law) as his nominee.

The Goodricks' testimony was contrary to this. They testified in substance that they believed they were selling their property directly to Mary Baker unencumbered. They were not aware they had signed title over to defendant and that defendant caused a trust deed to be placed on the property. Accordingly, in light of this evidence, the trust deed was part and parcel of a false scheme.

*People* v. *Wynn*, 44 Cal.App.2d 723, 728 et seq. [112 P.2d 979], is here applicable. In such case conditional sales contracts and chattel mortgages served to carry out the false pretense that the security was bona fide, and, as in that case, we here hold that the trust deed was a false token as well as a corroborating circumstance sufficient to meet the requirements of section 1110 of the Penal Code.

In addition, there was direct testimony of two witnesses

as to defendant's representations which also meet the requirements of the Penal Code, section 1110.

 Third: *Was a proper foundation laid for the admission of oral testimony relative to the contents of the letter from Keith Harold to his mother relaying defendant's misrepresentations?*

*Yes.* Verna B. Harold testified that she received the letter; that she did not have the letter at the time of trial; that she had searched for it and could not find it; that she did not recall what she had done with it after she had showed it to her husband; that she looked for the letter in September, 1953, both at home and in her safety deposit box at the bank where she kept papers relating to the transaction in question. Clearly this was sufficient foundation for the admission of oral testimony predicated upon the finding of the trial court that the written document itself had been lost.

 Fourth: *Did the trial court err in admitting testimony of Mr. and Mrs. Goodrick and of Mary Baker?*

*No.* Defendant contends that such testimony was irrelevant. It was relevant to the transaction with Keith Harold as showing part of the scheme which defendant had devised for the purpose of defrauding Mrs. Harold. (See *People* v. *Eddards,* 25 Cal.App. 660, 664 et seq. [145 P. 173].)

 There was likewise no error in permitting Mr. Goodrick to testify as to what he thought the 304 acres were worth on August 8, 1950, since he then was the owner of the property and had been for a number of years. Therefore his opinion as to its value was proper. (*People* v. *La Macchia,* 41 Cal.2d 738, 746 [11] [264 P.2d 15].)

 Neither is there any merit in defendant's contention that the court erred in admitting the testimony of Mr. De Flon and Mr. Depue as experts as to the value of the 304 acres. Each testified he had bought and sold property in the area and was familiar with the property values over a long period of time. Their qualifications fell within the rule stated by the Supreme Court in *People* v. *La Macchia, supra,* 746 [10], as follows:

"The usual expert is qualified by proof of his familiarity with the property and with other property in the neighborhood, his experience in the business, his familiarity with the state of the market and of sales of similar property in the vicinity. . . ."

 Fifth: *Is real estate a subject of theft?*

Defendant contends that Penal Code, sections 484 and 532

are inherently unconstitutional and not applicable to real property, relying upon *People* v. *Cummings* (1896), 114 Cal. 437 [46 P. 284]. After the decision in *People* v. *Cummings,* our Supreme Court in *People* v. *Rabe* (1927), 202 Cal. 409, 416 [261 P. 303], held that, in view of the subsequent amendment of the statute (§ 532) to include real property the holding in *People* v. *Cummings, supra,* no longer states the law, and that real property may be the subject of theft just the same as personal property. (*Cf. People* v. *Roland,* 134 Cal.App. 675, 680 et seq. [26 P.2d 517]; *People* v. *Hiden,* 102 Cal.App.2d 655, 659 [2] [228 P.2d 95].)

 Sixth: *Did the trial court err in (a) giving certain instructions, and (b) refusing to give other instructions requested by defendant?*

*No.* An examination of the record shows that the trial judge fully, fairly and correctly advised the jury on each and every material issue, and that the instructions requested by defendant and refused were either covered by the instructions read by the trial judge to the jury or were properly refused as inapplicable to the present case. (*People* v. *Gardner,* 128 Cal.App.2d 1, 8 [15] [274 P.2d 908] (hearing denied by the Supreme Court).)

The judgment and order denying the motion for a new trial and "all proceedings had at the time of passing judgment and sentence" are, and each is, affirmed.

Fox, J., and Ashburn, J. pro tem.,* concurred.

A petition for a rehearing was denied December 6, 1955, and appellant's petition for a hearing by the Supreme Court was denied December 21, 1955.

---

*Assigned by Chairman of Judicial Council.