[Civ. No. 22957. Second Dist., Div. Two. Oct. 21, 1959.]

KEITH B. HAROLD et al., Respondents, v. ELMER R. PUGH, Appellant.

606

Morris Lavine for Appellant.

Dunnum & Dunnum and Ray L. Mayfield for Respondents.

ASHBURN, J.—Defendant appeals from a judgment for $14,950 compensatory damages and $1,500 exemplary damages awarded plaintiffs as a result of an egregious fraud practiced upon them by defendant. The case grows out of the same set of facts as *People* v. *Pugh,* 137 Cal.App.2d 226 [289 P.2d 826], wherein this court affirmed Pugh's conviction of grand theft of real property of Keith Harold and his mother Verna B. Harold,—the same property and the same deal which are hereinafter discussed. Appellant advances 10 different grounds of reversal, none of which is meritorious.

Counsel has wholly failed to "demonstrate that there is no substantial evidence to support the challenged findings" as he is required to do upon appeal. (*Nichols* v. *Mitchell,* 32 Cal.2d 598, 600 [197 P.2d 550] ; *New* v. *New,* 148 Cal.App. 2d 372, 383 [306 P.2d 987].) The arguments proceed largely upon the assumption that the trial court was obligated to accept the testimony of defendant wherever uncontradicted, notwithstanding the judge's conviction that he has been guilty of deliberate fraud. Of course, that is not the law. (*People* v. *Pugh, supra,* 137 Cal.App.2d 226, 233 ; *Bechtold* v. *Bishop & Co., Inc.,* 16 Cal.2d 285, 291-292 [105 P.2d 984] ; *Nevarov* v. *Caldwell,* 161 Cal.App.2d 762, 777 [327 P.2d 111] ; *Bazaure* v. *Richman,* 169 Cal.App.2d 218, 221-222 [336 P.2d 1014] ; *Cicinelli* v. *Iwasaki,* 170 Cal.App.2d 58, 68 [338

P.2d 1005].) Our duty begins and ends with a determination whether there is substantial evidence, contradicted or uncontradicted, supporting any challenged finding. (*Nichols* v. *Mitchell, supra,* p. 600; *New* v. *New, supra,* p. 383.)

Viewing the evidence in the light most favorable to respondents, the factual situation appears to be as follows: Plaintiffs, Keith B. Harold and his mother, Verna Harold, were the owners of certain property known as 6200 State Street in Huntington Park. The legal title stood in the mother's name, being held as security for a loan owing her by the son. They exchanged this property for $500 and a note and trust deed secured by a parcel of 304 acres of desert land in San Bernardino County. Defendant Elmer R. Pugh was the real estate broker in the transaction. He had previously effected a sale of the desert land to Mrs. Mary Baker, a retired school teacher, who had paid him $300 and had executed a $15,000 note secured by a trust deed upon the property, which paper ran to Lulu Brockman, Pugh's mother-in-law, who acted as a mere dummy for him. The trust deed represented purchase money and would not support a deficiency judgment (Code Civ. Proc., § 580b); Mrs. Baker had no assets with which to pay the installments of principal or interest.

Appellant induced plaintiffs to sell their home through the making of fraudulent representations as follows: That Pugh had an elderly woman client who owned a note secured by a deed of trust on certain alfalfa land in San Bernardino County; she would trade said paper for plaintiff's home; said alfalfa land was located in Hinkley Valley and was worth $75 an acre as alfalfa land; the owner of the land was Mary Gregoria Baker, an elderly woman who owned an alfalfa farm close to the subject property; she also owned several pieces of income property in the Westlake Park district (of Los Angeles); she was well able to develop the property and had the necessary knowledge so to do; she had two sons-in-law that were to farm the land subject to the trust deed; she was also an executive and owner of a plastic concern; also that the deed of trust was readily salable at face value and defendant was not making one penny from the deal.

Upon substantial and sufficient evidence the court found with respect to these representations that they were wholly and in every respect false; also that the relationship between Lulu Brockman and Pugh was never disclosed; that said 304 acres subject to the trust deed was not valuable land, not

alfalfa land or suitable for agricultural purposes at all; it was not worth $75 an acre but was worth the sum of one dollar per acre; "[t]hat said deed of trust was not then and is not now a valuable security, nor is the said deed of trust readily salable at its full face value or in any other sum in excess of $304.00. The said Elmer R. Pugh was deriving and did derive a secret benefit from the transaction and that he has received the entire consideration from the plaintiffs herein, viz: the value of their home located at 6200 State Street, Huntington Park, California, for which plaintiffs paid $15,-750.00 and the reasonable market value of which at all times herein mentioned was $15,750.00." In exchange for their home plaintiffs received the sum of $500 and said note and trust deed of the then market value of $304, nothing else. This State Street property went to appellant's dummy, Lulu Brockman, later to his daughter Mary Lucille Pugh, and when it was sold appellant received the proceeds. Deducting $800 from the value of plaintiffs' home the court found they had been damaged in the amount of $14,950, to which it added $1,500 as a punitive award for a fraud which had been perpetrated maliciously.

Appellant argues first that the amended complaint (which sounds in damages and not rescission) did not state a cause of action because there was no averment that plaintiffs had exhausted their security under a power of sale contained in the trust deed. The point is frivolous and the cases cited do not support it in any manner or degree.

Under the caption, "The Findings are contrary to the law and the evidence," appellant's counsel attacks various findings as unsupported and to that end relies upon assertions as to what the evidence proves, without furnishing transcript references, or relies upon evidence favorable to defendant's contentions which is contradicted by other evidence that the court accepted as true.

The claim that no representation was made to Verna Harold because "[t]here is no evidence that the [defendant] ever had any direct contact with or made any representations to Verna Harold" rests upon no solid basis. It is settled law that "a representation made to one person with the intention that it shall reach the ears of another and be acted on by him, and which does reach him and is acted on by him to his injury, gives him the same right as if it had been made to him directly." (23 Cal.Jur.2d, § 32, p. 78.) That is the situation at bar. Representations made to the son were

communicated by him to the mother, as obviously was intended. See, in this connection, *People* v. *Pugh, supra,* 137 Cal.App.2d 226, 233-234.

■ Counsel's discussion of the evidence of value of the desert land and of the trust deed itself goes to the qualifications of the expert witnesses and the effect of conflicting evidence. It is argued in this connection that Keith Harold's testimony of the value of the State Street property should be rejected because he was not a qualified expert. It appears, however, that he was one of the owners and occupants of that property and as such qualified to testify. (*LeBrun* v. *Richards,* 210 Cal. 308, 319 [291 P. 825, 72 A.L.R. 336]; *McGowan* v. *Burg Bros.,* 59 Cal.App. 219, 224 [210 P. 545]; *Kahn* v. *Lischner,* 128 Cal.App.2d 480, 487 [275 P.2d 539]; 19 Cal.Jur.2d, § 373, p. 101.) ■ Again, the claim that he merely testified as to what he had paid for the property in April, 1949, cannot advance appellant's cause for testimony giving the price paid on a previous occasion for the identical property is competent evidence of its value at a later, but not too remote, date. (*Bagdasarian* v. *Gragnon,* 31 Cal.2d 744, 757-758 [192 P.2d 935]; *Eatwell* v. *Beck,* 41 Cal.2d 128, 134 [257 P.2d 643].) The fraud was committed in August and September of 1950.

■ The finding that the trust deed was not a valuable security and not readily salable for any sum in excess of $304 is attacked upon the ground that defendant testified without contradiction that the note and trust deed were worth $15,000 and no specific valuation was placed upon the paper by any of plaintiffs' witnesses; hence the value is established at $15,000 and plaintiffs have not been damaged, so it is said. On the contrary, the court rejected defendants' testimony in this regard,[1] as it had a right to do; and the value of the lien cannot possibly exceed the value of the land to which it is attached, $304.

■ It is said that plaintiffs had a duty to minimize their damages and for that purpose should have sold the land under

---

[1]This testimony was not stricken, and an objection made after the answer had been given was too late (see *Astill* v. *South Yuba Water Co.,* 146 Cal. 55, 58 [79 P. 594]). Moreover, appellant's present objection to the court's ruling on this matter was waived, as appears from the following colloquy: ''THE COURT: That objection will be sustained. MR. LAVINE: May I ask your Honor, on the ground that he's not the owner, your Honor? THE COURT: No. His opinion of the value of the note and trust deed. The note calls for Mary Baker's financial status, which he says he knew nothing about. MR. LAVINE: All right. I thought it was on the other ground, and I'd argue with it, but I won't with that, your Honor.''

the deed of trust; that if this were done it "would have netted the plaintiff all of the amount which she has claimed as damages." It is a novel idea that a forced sale of property will produce its market value or that such procedure is dictated by the obligation to mitigate damages. No such obligation existed. (See *Stenzel* v. *Kronick,* 94 Cal.App. 327, 330 [271 P. 211] ; 14 Cal.Jur.2d, § 112, p. 733.)

Appellant asserts that " [i]t was a duty on the part of the plaintiffs, if they deemed that there had been fraud, to tender the note and trust deed back and offer to restore. . . . The failure to offer to rescind waived the right to do so and recognized the existence of a contract. The plaintiff thereby affirmed the contract and destroyed the right of rescission." It is hornbook law that failure to rescind and suing for damages affirms the contract; but it does not affirm the fraud. (*Hines* v. *Brode,* 168 Cal. 507, 512 [143 P. 729] ; *Squire's Dept. Store, Inc.* v. *Dudum,* 115 Cal.App.2d 320, 323 [252 P.2d 418].) The presumption of regularity (Code Civ. Proc., § 1963, subds. 19 and 20) and the claimed presumption that the amount of the face of the note is its value (Pen. Code, § 492) can have no application here, for the contrary has been proved.

The court did not err in the measure of damages adopted. Section 3343 Civil Code affords the exclusive criterion. (*Bagdasarian* v. *Gragnon, supra,* 31 Cal.2d 744, 762.) Plaintiffs received from defendant $500 in cash and a note and trust deed worth $300; they parted with property having a value of $15,750; they were entitled to retain what they had received and to recover the difference between what they had parted with and what they had obtained; that difference, $14,950, is the amount awarded by the court as compensatory damages.

There was no error in receiving the testimony of Mrs. Baker concerning representations made to her as an inducement to pay $300 and execute a $15,000 note and trust deed as the purchase price of the land. (See *People* v. *Pugh, supra,* 137 Cal.App.2d 226, 235.) The objection now made is predicated upon the assertion of counsel that this suit was brought through collusion of Mrs. Baker and the plaintiffs herein. Counsel does not give transcript references to the evidence upon which he relies to support this assertion and our review of the record discloses that it does not support the claim of collusion.

After acquiring the Harold property which was later placed in the name of Mary Lucille Pugh, appellant's daughter, a loan was placed on it in the amount of $6,500. Defendant sought to prove that before making the loan Western Federal Savings and Loan Association had an appraisal made by one Nathan Libbot whose valuation was $8,250; to support this the records of the lender were offered, but objection thereto was sustained. It is claimed that they were admissible as business records under section 1953f Code of Civil Procedure. In truth, the whole subject is immaterial; whether the loan company had an appraisal made for loan purposes or how much it was could throw no legitimate light upon the issues of the actual market value of the property. ''The statute does not change the rules of competency or relevancy with respect to recorded facts. It does not make.that proof which is not proof. It merely provides a method of proof of an *admissible* 'act, condition or event.' It does not make the record admissible when oral testimony of the same facts would be inadmissible.'' (*McGowan* v. *City of Los Angeles,* 100 Cal. App.2d 386, 392 [223 P.2d 862, 21 A.L.R.2d 1206].) Libbot testified that he had no opinion as to the reasonable market value of this property. Also, ''[t]his appraisal was made for the company, for the purpose of making a loan, and we did not appraise purely on the basis of market value, but my appraisal to them at that time, under our understanding between the company and myself, was my opinion of the value of the property for the purpose of evaluating the term loan, rather than the market value of the property—which probably would have been and might have been different.''

It is argued that no competent or qualified expert testified on behalf of the plaintiff as to the fair market value of the desert land. ''All that is necessary to be shown to entitle a witness to give an opinion is to show 'that he has some peculiar means of forming an intelligent and correct judgment as to the value of the property in question, or the effect of a particular improvement, beyond what is presumed to be possessed by men generally.' (Lewis on Eminent Domain, § 437.) In this connection the same author says: 'These peculiar means may consist in . . . a long acquaintance with the particular property and the neighborhood where it is situated, accompanied with the occupation or ownership of similar property, and especially if accompanied with a knowledge of sales of similar property.' '' (*Spring Valley W.W.* v. *Drinkhouse,* 92

Cal. 528, 534 [28 P. 681].) "Owners of land in the vicinity, familiar with the property in question are competent witnesses (citations) . . . [and] frequently have a better idea of land values than strangers who are engaged in the business of selling land (citations)." (*Los Angeles High School Dist.* v. *Rodriguez*, 135 Cal.App.2d 760, 768 [287 P.2d 871].)

 " 'It is for the trial court to determine, in the exercise of a sound discretion, the competency and qualification of an expert witness to give his opinion in evidence (citation), and its ruling will not be disturbed upon appeal unless a manifest abuse of that discretion is shown.' " (*Beresford* v. *Pacific Gas & Elec. Co.*, 45 Cal.2d 738, 749 [290 P.2d 498, 54 A.L.R. 2d 910].) See also *Pacific Gas & Elec. Co.* v. *Hufford*, 49 Cal. 2d 545, 563 [319 P.2d 1033] ; *Long Beach City H.S. Dist.* v. *Stewart*, 30 Cal.2d 763, 772-773 [185 P.2d 585, 173 A.L.R. 249].

Plaintiffs' witnesses testifying to the value of the 304 acres were Mr. Asher Goodrick, who sold to appellant and fixed the value at "a dollar, dollar and a half, two dollars an acre"; Mr. Gillis De Flon who testified it was worth $1.50 an acre; Mr. Earl H. Depue who said it "wasn't worth over $5.00 per acre." All of them were qualified to testify to the value of this land and the court did not err in so ruling. The same contention was made with respect to each of these witnesses in *People* v. *Pugh, supra*, and was held to be without merit (see p. 235 of 137 Cal.App.2d).

Numerous other contentions have been advanced by appellant, all have been examined and no error, certainly no prejudicial error, is shown; said arguments require no further or separate discussion.

Judgment affirmed.

Fox, P. J., and Herndon, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 16, 1959.