[Crim. No. 5774.    Second Dist., Div. Three.    June 26, 1957.]

THE PEOPLE, Respondent, v. PEGGY GUSUKUNA, Appellant.

Forno & Umann and Joseph T. Forno for Appellant.

Edmund G. Brown, Attorney General, and Morris Schachter, Deputy Attorney General, for Respondent.

WOOD (Parker), J.—Defendant was charged, in three counts, with violating section 337a, subdivisions 1, 2, and 4 of the Penal Code, viz: bookmaking upon the result of horse racing; occupying an apartment with books, papers and paraphernalia for the purpose of recording bets; and recording bets. Trial by jury was waived. Defendant was adjudged guilty as charged. She appeals from the judgment and the order denying her motion for a new trial.

Appellant contends that the arrest was not lawful; and that the People's exhibits were obtained as the result of unlawful search and seizure and were erroneously received in evidence. She argues to the effect that there was no probable cause for the arrest.

About March 17, 1956, Officer Boulter received a written inter-departmental complaint or form from the administrative vice department of the Los Angeles Police Department, which stated that a woman by the name of Peggy was taking bets over the telephone and from the street at 920 West 11th Street, and that she lived in apartment 300 at that address. The complaint also contained a description of the woman.

On March 24, 1956, about 1:45 o'clock, Officers Boulter and Andrews parked across the street from said address, and approximately 100 feet north on Bixel Street, from which place they could observe the front of the apartment. They did not have a search warrant or a warrant for the arrest of defendant.

Officer Kenneth Boulter testified that soon after they arrived there the defendant came out of the apartment house, and he "observed her talking with three different people on the street and they exchanged what appeared to me [him] was currency and then she would go back into her apartment"; she did not give anything in exchange for the currency; after he had had defendant under surveillance about an hour, he went to her apartment and knocked on the door; defendant asked who it was; he replied, "Kenny"; defendant opened the door, and he asked her for the results of the eighth race at Gulf Stream; she replied that Needles had won by approximately five lengths; at that time he could see, from the door, a telephone, the National Daily Reporter, and two pieces of paper with writing on them which appeared to be betting markers; those things were on the telephone table in the apartment; he walked into the apartment; when he was in the apartment he identified himself as an officer and he placed defendant under arrest; he saw a scratch pad and a ballpoint

pen beside the telephone; he went to the front window and summoned Officer Andrews, who was on the street, and after his arrival they recovered the evidence (the pieces of paper with ink writing thereon, National Daily Reporter, scratch pad, and pen); defendant told the officers that she had written on the scratch paper, that is all she had written that day, she took bets from her friends and called the bets to a man before each race, and she received 5 per cent commission.

It was stipulated that Officer Boulter is an expert in the devices and means of bookmaking. He testified further that in his opinion the pieces of paper with writing on them were betting markers and were bets on horses running on March 24, 1956, at tracks throughout the country; the markings on the papers, which represented about 55 bets, coincided with numbers on the National Daily Reporter of that date. He also testified that they recovered a house key from her, which she had used to lock the apartment door.

Officer Andrews testified that when he entered the apartment he saw all the exhibits, except the door key, upon a table in the apartment, and he also saw a telephone on the table; the telephone rang and he answered it; a female voice asked for Peggy, and he replied she was not there; then the voice asked if he was Charley, and he replied in the affirmative; then the person gave him a wager on a horse that was running at Tanforan that day; when he answered the telephone again, a female voice asked "who" won the daily double at Tanforan, and she requested that Peggy call and let her know about it because she "had something going on that."

There was testimony by a handwriting expert to the effect that in his opinion the handwriting on Exhibit 6 (an exemplar of defendant's handwriting) is the same handwriting as that on Exhibit 1 (the betting markers).

Defendant did not testify.

A peace officer may, without a warrant, arrest a person when a felony has been committed and the officer has reasonable cause for believing the person arrested to have committed it. (Pen. Code, § 836.) ██ "Probable cause is shown if a man of ordinary caution or prudence would be led to believe and conscientiously entertain a strong suspicion of the guilt of the accused." (*Bompensiero* v. *Superior Court,* 44 Cal.2d 178, 183 [281 P.2d 250].) In *Willson* v. *Superior Court,* 46 Cal.2d 291 [294 P.2d 36], a man told the Chief of Police of San Diego that bookmaking was in progress at a certain bar and that a waitress there by the name of Mona

would generally be found near the telephone and that she occasionally answered it, and she took bets from the customers in the bar. The chief of police did not know the man who gave the information. The chief gave the information to police officers who went to the bar and observed a waitress, with slips of paper in her hand, standing at the bar on which there was a telephone, a scratch pad, and a pencil. There was a name plate on her belt with name ''Mona'' on it. When an officer (who had not identified herself as an officer) asked to see what the waitress had in her hand the waitress attempted to crumple the papers which she was holding. The question was whether the information given by the unidentified man to the chief and communicated by the chief to the arresting officers was sufficient in the light of the other evidence to constitute reasonable cause for the arrest. The court said (p. 294): '' [E]vidence must be presented to the court that would justify the conclusion that reliance on the information was reasonable.'' It was said further therein (p. 295) that such evidence may be supplied ''by the personal observations of the police.'' It was said further (p. 295): ''Although petitioner's [waitress'] conduct observed by Officer Sunday in the bar would not of itself constitute reasonable cause to believe she was committing a felony, it was sufficient to justify Officer Sunday's reliance on the information given her of petitioner's bookmaking.'' It was held therein that there was reasonable cause for the arrest, search and seizure.

⬛ In the present case, the officers had received information, by a written communication from the administrative department of the police department, to the effect that a woman by the name of Peggy was taking bets by telephone and from the street at the address above stated. The officers had kept the apartment house under surveillance and observed the defendant come out of the apartment house, talk to three persons on the street and receive from them something which appeared to be currency. When defendant opened the door of her apartment, in response to a knock on the door by the officer, he asked for the result of the eighth race at Gulf Stream and she replied that Needles had won. While the officer was at the open door he saw bookmaking paraphernalia by the telephone on the telephone table. The arrest was made after he had observed those articles on the table and after he was in the apartment. The observations of the arresting officer, prior to the arrest, were sufficient to justify

his reliance upon the information given him as to bookmaking by defendant at said address. There was reasonable cause for the arrest, and the arrest was lawful.

It is apparent that the search was an incident to the arrest. The search and seizure consisted of taking the betting markers, scratch sheet, scratch pad, and the pen which were on the telephone table. ■ "It is well settled that a search without a warrant is valid where it is incident to a lawful arrest, if it is reasonable and made in good faith; and that a seizure, during such a search, of evidence related to the crime is permissible." (*People* v. *Winston,* 46 Cal.2d 151, 162 [293 P.2d 40].) The search and seizure were lawful.

The evidence was sufficient to support the judgment.

The judgment and the order denying the motion for a new trial are affirmed.

Shinn, P. J., concurred.