[Crim. No. 2873.   Third Dist.   Jan. 14, 1959.]

THE PEOPLE, Respondent, v. PRESTON PERSKY, Appellant.

Timothy J. Crowley for Appellant.

Edmund G. Brown, Attorney General, and Doris H. Maier, Deputy Attorney General, for Respondent.

SCHOTTKY, J.—Defendant was charged with five counts of grand theft. (Pen. Code, § 484.) In count one defendant was accused of taking "... an equity of the value of $456.00 in a 1955 Studebaker automobile, and of the personal property of L. J. Downing." In count two defendant was accused of taking "... one 1955 Studebaker automobile of the personal property of L. J. Downing." In count three the defendant was accused of taking "... One Thousand Four Hundred Ninety-five and no/100ths ($1,495.00) Dollars, in money, lawful money of the United States, and of the personal property of L. J. Downing." In count four the defendant was accused of taking "... one 1953 Lincoln auto-

mobile of the personal property of L. J. Downing.'' In count five the defendant was accused of taking ''. . . in excess of Fifteen Hundred ($1,500.00) Dollars, in money, lawful money of the United States, and of the personal property of L. J. Downing.'' A jury found defendant not guilty of counts one and three and guilty of counts two, four and five. Defendant's motion for a new trial was denied, probation was denied and judgment was pronounced. Defendant appeals from the judgment, from the order denying his motion for a new trial and from the order denying probation. The latter order being nonappealable, the appeal therefrom must be dismissed.

Appellant makes a multifold attack upon the judgment and order. He urges that: 1. The evidence is insufficient to sustain the verdicts; 2. The court erred in denying appellant's motion to exclude all witnesses from the courtroom; 3. The court erred in limiting the cross-examination of the witness Downing; 4. The verdicts on counts one and two and the verdicts on counts three and four are inconsistent; and 5. The court erred in refusing to admit testimony concerning the State Board of Equalization sales tax regulations.

Before discussing these contentions, we shall summarize the evidence as shown by the record, bearing in mind the familiar rule that the evidence must be viewed in the light most favorable to the respondent and that conflicts in the testimony must be disregarded.

On October 1, 1956, Preston Persky was employed by Loren Downing, an automobile dealer, to manage his business located at Fort Bragg, California. The parties agreed that Persky was to manage the business and that he was to be paid as a salary 50 per cent of the net profit of the business. The agreement further provided that Persky would be entitled to draw on such profit at the rate of $100 per week. Persky began his duties. Downing continued to sign all the contracts which were discounted at the bank and to sign all checks. In all other respects, except for a few deals, all transactions in automobiles were by or under the supervision of Persky. A used car lot was established in Windsor, near Santa Rosa, in the back yard of one Clifford Turner. Cars were kept there and transactions were entered into there. Persky introduced certain records referred to as ''Whiz Tickets,'' which were the sales tickets, from which the bookkeeper obtained the necessary information to post his books. The accounting records of the establishment were posted from these tickets.

Persky continued to operate the business until the latter part of March, 1957, and finally about March 31, 1957, he discontinued his participation in the business. Some months later an audit of the business was had. This revealed discrepancies existed between the amounts listed on the sales tickets and the amounts listed on the contracts of sale which were discounted with the bank. It also revealed that certain automobiles were missing. As a result of the audit, Downing filed a civil action against Persky. He also made a complaint to the district attorney who, after certain preliminary proceedings, filed an information charging Persky with five counts of grand theft as hereinbefore set forth.

Counts one and two involved the same transaction and were merely alternative methods of charging the same crime. Counts three and four also involved the same automobile and were alternative methods of charging the same crime.

In February, 1957, Persky purchased a 1955 Studebaker from the business for $1,456. He traded a 1952 Mercury for which he was allowed the sum of $456. Persky did not have title to the Mercury, but he informed Downing that he would get title. This was never done. The Mercury was registered to a Raymond Arbizu. The legal owner was a Henry Rondoni who testified that the Arbizu contract was in default; that he had been approached by a man who said he knew where the Mercury was and who offered to deliver it to Rondoni for $100 or buy it for $200. Rondoni sent this man to talk to the dealer who had sold the car and who was contingently liable on the contract. Since the incident no one had attempted to purchase the car. Downing has never received title to the Mercury.

In March, 1957, one H. D. Burnett purchased an Oldsmobile from the firm. The sale was negotiated by Clifford Turner. Burnett traded a 1953 Lincoln valued at $1,495 as a down payment. The records of the business do not reveal what happened to the car. Persky testified that he sold the car for $939 at an automobile auction. He also testified he paid a few bills which were owed by Downing and that he retained the balance of the funds. He figured that he had more than that due him.

The evidence to support count five of the information is a little more complex. During the audit it was discovered that the figures on the contracts which were discounted with a bank did not correspond with the figures on the sales or "Whiz" tickets. The auditor accepted the figures that ap-

138

peared on the contracts because they were signed by the purchaser while the sales tickets were not. The contracts indicated cash payments, which the sales tickets did not. In several of the cases the customer testified that a cash down payment was made or that a larger cash down payment was made than was reflected in the sales tickets. From these computations a shortage of over $1,500 was determined to exist. One Ruth Wassalino purchased a 1953 Ford. The contract indicated that $369.80 was paid down. The sales ticket which was in Persky's handwriting indicated that $25 was received down and that $119.80 was due. Mrs. Wassalino testified that she made a down payment of $250. She gave a check of $250 to Clifford Turner. One Florence Valentine purchased a 1949 Chevrolet from Persky for $349. She paid $325 down. The sales ticket indicated that the total price of the car was $193 and that a deposit of $75 had been made. James Thomas testified that he purchased a car from Persky and paid $100 in two installments. He had a receipt signed by Persky for $54 and a receipt signed by a William Sartain for $46. Thomas testified "it was understood that it was okay to pay him, to give him the money and he was going to give it to Mr. Persky."

We are satisfied that the evidence is sufficient to support the conviction on count two. If Persky falsely represented that he would get title to the Mercury which he traded in on the Studebaker he purchased, he would be guilty of theft. Persky made no effort to obtain title to the Mercury except by writing the Department of Motor Vehicles the latter part of March, 1957, to learn the registered and legal owner of the car. It is rather strange for a person to trade in an automobile that he does not have title to and to state that he will get title and then do nothing to actually obtain title. We believe that the jury could find that Persky obtained the Studebaker through false representations and that Persky never intended to get title to the Mercury when he purchased the Studebaker.

We believe also that the evidence is sufficient to support the conviction on count four. Persky, by his own testimony, admitted that he sold the Lincoln and retained the proceeds. This was not an open claim of title to the car. This was an unlawful disposition of the property of Downing to satisfy an alleged debt Downing owed Persky.

The evidence to support count five consists of the evidence which shows that Persky collected sums which were

not reported to the firm. The evidence clearly establishes that Persky personally received the sum of $304 which was not reported. (Florence Valentine $250, James Thomas $54.) In addition Persky testified that he had received $150 from a Mr. Harmon. This would show the sum of $454 actually received by Persky. Even the lesser amount satisfied the requirement of grand theft.

Appellant has made a lengthy, earnest and able argument in support of his contention that the record does not support the conviction on any of the counts. However, his argument points out testimony which appellant contends is favorable to appellant, and merely accentuates the conflict in the testimony. It was the province of the jury to weigh the evidence, and we are convinced that the evidence supports the conviction on counts two, four and five.

■ Appellant's second contention is that the court erred in not excluding all the witnesses during the trial. Before any testimony was received counsel for appellant made a motion to exclude all witnesses. The prosecution was permitted to have Mr. Downing and the certified public accountant who made the audit remain. The case involved many accounting records, and it is understandable that the district attorney would need an accountant at his side to advise him on the accounting aspects of the case. Mr. Downing was the owner of the business, and he would be familiar with many aspects of it. Under such circumstances we do not believe we would be justified in holding that the trial judge abused his discretion in permitting the two witnesses to remain. The rule is that the exercise of the power which is provided for in section 2043 of the Code of Civil Procedure as to the exclusion of witnesses is discretionary with the trial court. (Witkin, California Evidence, § 568; *People* v. *Lariscy*, 14 Cal. 2d 30 [92 P.2d 638]; *People* v. *Garbutt*, 197 Cal. 200 [239 P. 1080].)

■ Appellant next contends that the court committed prejudicial error in not permitting cross-examination of Mr. Downing as to statements made by him in a complaint filed in a civil action against Persky which dealt with the same matter as the criminal prosecution. Appellant contends that this was admissible for the purpose of testing the credibility of Downing. The record shows that the following occurred: "MR. CROWLEY: However, it would go to show, first of all, test his credibility, his veracity, which is certainly heavily under attack in this matter, and I think successfully so, and

it would go also to his motive for instituting these criminal proceedings. If the court wishes, I could abandon the question along that line for today, because we won't be going too much longer anyway and perhaps I could supply some authority to show the relevancy of these questions tomorrow. The Court: Well, you will have the opportunity to do so, but the objection is sustained at this time."

The record does not show that appellant's counsel sought to pursue the matter further, but the record does show that the complaint was later introduced in evidence and was before the court and jury.

Appellant was, of course, entitled to impeach the witness by showing that statements in the complaint filed in the civil action were inconsistent with the testimony of the witness in court. However, appellant did not point out to the trial court and has not pointed out in his brief filed in this court anything in the complaint which was inconsistent with the testimony given at the trial. The record discloses that the trial court told counsel for appellant "if you will explain to me how that is relevant to anything in his direct examination I'll hear you." In view of the fact that no explanation was ever offered, the ruling of the trial court was not erroneous.

■ Appellant contends further that the verdict of guilty on count two is inconsistent with the verdict of not guilty on count one, and that the verdict of guilty on count four is inconsistent with the not guilty on count three. The information charged appellant in count one with the unlawful taking of Downing's equity in the 1955 Studebaker. In count two appellant is charged with the taking of the Studebaker automobile, personal property of Downing. Both charges are for grand theft. Similarly, count three charges appellant with the taking of $1,495 which was the value of a 1953 Lincoln, and count four charges appellant with taking the 1953 Lincoln automobile. An accusatory pleading "may charge . . . different statements of the same offense . . . under separate counts . . ." (Pen. Code, § 954.)

The jury was instructed that if they found the defendant guilty as charged on either counts one or two, they must find him not guilty as charged in the other, and if they should find defendant guilty as charged in either of counts three and four, they must find him not guilty as charged in the other. The court went on to say, "That is, Counts One and Two relate to the same set of circumstances charging the crime in a little different language, and you can't find him guilty on

both Counts One and Two. If you construe the evidence such that you are convinced to a moral certainty that he is guilty of Count One, you must find him not guilty on Count Two. I'm using that simply as an illustration, and the same thing applies to Three and Four.'' A similar instruction has been approved for situations as in the present case where the facts charged in two counts are merely different statements of the same offense. (*People* v. *Hiden*, 102 Cal.App.2d 655, 660 [228 P.2d 95]; see *People* v. *Breyer*, 139 Cal.App. 547 [34 P.2d 1065, 1067].) Such an instruction does not state or imply that the jury should bring in a guilty verdict on either or any of the offenses charged.

The finding of not guilty of counts one and three cannot be deemed an acquittal of counts two and four. (Pen. Code, § 954.) As stated in *People* v. *Nye*, 38 Cal.2d 34, at page 39 [237 P.2d 1]: ''An indictment or information may charge 'different statements of the same offense or two or more different offenses of the same class of crimes or offenses, under separate counts' and a verdict of acquittal on one count is not an acquittal on any other count. (Pen. Code, § 954.) Thus, whether or not Counts II and IV charged different statements of the same offense or two offenses of the same class of offenses, the dismissal of Count II was not tantamount to an acquittal on Count IV. (*People* v. *Codina*, 30 Cal.2d 356, 360 [181 P.2d 881].)''

The elements of the corpus delicti of the offenses charged in count one are different from the elements charged in count two and the offense charged in count three is different from the offense charged in count four. In count one appellant is charged with taking an equitable right, and in count two appellant is charged with taking the legal title to the car. Under count three appellant is charged with taking the proceeds from the sale of the automobile, and under count four appellant is charged with taking the automobile.

It is apparent that these counts are in the alternative and that the jury would have had to find that Downing had either an equity in the car or was the legal owner. Apparently they found the latter. There was no inconsistency in such a verdict.

The court did not err in excluding evidence of the asserted sales tax regulation dealing with over allowances and discounts. Counsel for appellant sought to prove that ''it was common practice in the industry, and as a matter of fact, the sales tax people themselves, the people themselves, recognized the fact that special discounts, over allowances and fictitious

cash down payments were listed on conditional sales contracts and prior to January 9, 1956, the rule and regulation in the industry was that the sales tax would be computed on what was actually received by the dealer and not what was shown on the conditional sales contract.'' The court excluded the offered evidence on the ground that it was immaterial and collateral testimony, and we think the ruling was correct, as it was too remote to have any materiality in the instant case. Appellant testified that the contracts were drafted to show that an adequate down payment was received so that the bank's minimum down payment requirements would be met, and that the contracts which were prepared by appellant did not correctly state the amount of the down payments. Even if it were a practice of the automobile industry to give over allowances, which would in effect be a practice of committing fraud, we believe that proof of the asserted sales tax regulation was entirely collateral to any issue in the case and was properly excluded.

We are convinced from a study of the entire record that the appellant received a fair trial, that there was ample evidence that he was guilty of the counts of which he was found guilty, and that no prejudicial errors were committed.

The judgment and order are affirmed. The appeal from the order denying probation is dismissed.

Van Dyke, P. J., and Peek, J., concurred.