[Crim. No. 1545. Fourth Dist. Apr. 11, 1961.]

THE PEOPLE, Respondent, v. VITO CARELLA et al.,
Appellants.

Samuel Hurwitz for Appellants.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and George W. Kell, Deputy Attorney General, for Respondent.

COUGHLIN, J.—The defendants Carella, Krausnick and Buxton, who are the appellants herein, by indictment were charged with felonies involving bookmaking; Count One in the indictment charged all of the defendants with a conspiracy to violate section 337a of the Penal Code, i.e., engaging in bookmaking, keeping a room for gambling paraphernalia and the making of bets, receiving and holding money

in connection with wagers, recording and registering bets and wagers upon certain contests, and accepting bets and wagers on certain contests; Counts Two and Three respectively charged the defendants Carella and Krausnick with engaging in bookmaking and with keeping and occupying a place with gambling paraphernalia for the purpose of recording and registering bets, which offenses allegedly occurred on July 3, 1958; Count Four charged the defendant Carella with recording a bet on a horse race on July 2, 1958; and Count Five charged the defendant Krausnick with recording a bet on the results of a horse race on July 3, 1958. The defendants were tried by the court without a jury; did not testify; and were found guilty on all counts except Count Four which charged Carella with bookmaking on July 2, 1958. A motion for a new trial was made and denied. Thereafter each defendant was sentenced to the state prison for the term prescribed by law, with the sentences to run concurrently; they applied for probation; their application was granted; and the sentences were suspended upon condition that they serve three months in the county jail. The defendants appealed from the judgment entered and from the order denying their motion for a new trial.

The issues on appeal concern primarily: (1) the effect of the failure of the indictment to have indorsed thereon all of the names of the witnesses interrogated by the grand jury and the failure to supply the defendants, before trial, with a transcript of all of the testimony presented to that body; (2) a consideration of the admissibility and sufficiency of evidence to establish reasonable cause for an arrest and search without a warrant; (3) the alleged unreasonable manner in which that search was conducted and the admissibility of evidence obtained thereby; (4) an alleged denial of the right of the defendants to inspect records in police custody; (5) the admissibility of testimony concerning communications over the defendant Buxton's telephone; (6) the alleged erroneous use of that testimony; and (7) alleged error in failing to exclude certain persons from the courtroom upon the request of the defendants.

### Alleged Insufficiency of Indictment and Transcript

The grand jury presented the subject indictment to the Superior Court of Orange County on August 14, 1958. Indorsed thereon were the names of 15 witnesses. In due course, and prior to trial, the defendants were served with two

transcripts purporting to relate the proceedings had before the grand jury. During the course of trial it was disclosed that the names of all witnesses who had testified before the grand jury were not indorsed on the indictment, and that the transcripts theretofore furnished the defendants did not contain a transcript of the testimony of all of the witnesses that testified before that body. Thereafter the court ordered that a transcript of all of the testimony presented to the grand jury, not theretofore transcribed, should be prepared; the order was complied with; and transcripts containing the testimony of 28 additional witnesses, including the testimony of a defendant named Greiner, who was found not guilty, and also that of the defendant Carella, were furnished the defendants. The aforesaid disclosure came about during the fourth day of trial, i.e., on March 4, 1958, when the attorney for the defendants stated to the court: "Now, if the Court please, if I may be allowed to, in the testimony of Mr. Oxandaboure yesterday there was one of the witnesses before the Grand Jury whose testimony isn't in the transcript and we believe that there are also others who testified before the Grand Jury and their testimony is not in the transcript. I am not certain who all of those people were but I think we should be furnished with the testimony of all of the witnesses who testified in this matter before the Grand Jury." The next day, i.e., March 5, the attorney for defendants again referred to this matter and stated to the court: "There are also others who testified before the Grand Jury in connection with this matter and their testimony is not in this Grand Jury transcript. I am not certain who all of these people are but I think we should have an order requiring that we be furnished with a copy of the testimony of all the witnesses who testified in this matter before the Grand Jury." On this date the trial judge called the secretary of the grand jury, which had been discharged the day previously, and asked her whether she had a list of the witnesses in question; indicated that he was not sure that he had a legal right to have her tell him the names of these witnesses over the telephone; but, upon determining that she had the minutes of the grand jury containing the names in question, asked her not to destroy them, and told her that he would let her know if they were needed. Previously the grand jury had decided that their minutes should be destroyed. The secretary expected the judge to call her back forthwith; he did not do so; and the next day she destroyed the minutes. The case was

recessed until March 9th. In the meantime the stenographic reporter who reported the grand jury proceedings had been contacted, and, as heretofore noted, transcribed the testimony not theretofore transcribed. A partial transcript of this additional testimony was given counsel for the defendants on the morning of March 9th with the information that the balance thereof would be furnished the next day. Thereupon the defendant moved to dismiss the action. The motion was denied, but in response to comments by the defendants' attorney which were made in the course of his argument in support of the motion, the court indicated that it would order the reappearance of a witness who previously had testified in the case and also before the grand jury, but whose name was not indorsed on the indictment and whose testimony before the grand jury theretofore had not been transcribed. The next day, i.e., March 10th, the secretary of the grand jury and the stenographic reporter who had reported the proceedings before the grand jury were examined by the trial judge and counsel. From this testimony it appeared that the minutes of the grand jury had been destroyed; that the investigation in question had been conducted before the grand jury on July 17, 18, 23, 24 and 31; that the original transcript contained the testimony of all of the witnesses who had appeared on July 31st, and of some of the witnesses appearing on the other days; that only one reporter had reported the proceedings on July 17, 18, 23 and 24; that the original and supplemental transcripts heretofore referred to were prepared by her and contained all of the testimony given before the grand jury on all of these days; that, before preparing the original transcript, she had asked the deputy district attorney in charge of the case what to type up and he told her to transcribe the testimony of certain named witnesses, being those whose testimony appeared in that transcript. At the conclusion of this testimony the defendants renewed their motion to dismiss. Relying upon the decisions in *People* v. *Delhantie,* 163 Cal. 461 [125 P. 1066] and *People* v. *Cowen,* 41 Cal.App.2d 824 [107 P.2d 659], the trial court ruled that a dismissal would not be proper and denied the motion. Thereupon the defendants asked that the case be continued for 10 days; this motion was granted; and the case was continued to March 23, i.e., 13 days. On the latter date, at the request of defendants, because of the illness of their counsel the matter was continued until March 25th. On this date the defendants moved for a mistrial, indicating an in-

tention to move for a dismissal pursuant to the provisions of section 995 of the Penal Code upon the ground of lack of probable cause, contending that the information contained in the supplemental transcripts justified the making of such a motion. In ruling thereon, among other things, the trial court indicated that the existence of probable cause satisfactorily appeared. The motion for a mistrial was denied.

Section 943 of the Penal Code provides that: ". . . the names of the witnesses examined before the grand jury . . . must be inserted at the foot of the indictment, or indorsed thereon, before it is presented to the court."

■ The purpose of these provisions is "first, to inform the party who are his accusers; and second, to inform the prosecutor who are the witnesses." (*People* v. *Freeland,* 6 Cal. 96, 98; *People* v. *Northey,* 77 Cal. 618, 629 [19 P. 865, 20 P. 129].) ■ A failure so to insert or indorse the names of the witnesses does not render the indictment void or require that it be set aside. (*People* v. *Cowen, supra,* 41 Cal. App.2d 824, 826.) Prior to 1927 such a failure was one of the grounds prescribed in section 995 of the Penal Code for setting aside an indictment (Stats. 1911, ch. 256, p. 435), but in that year, by amendment, this ground was eliminated (Stats. 1927, ch. 854, p. 1756), and in lieu thereof section 995a was adopted which now provides: "If the names of the witnesses examined before the grand jury are not inserted at the foot of the indictment or indorsed thereon, the court shall order them to be so inserted or indorsed; . . ."

■ In the case at bar the names of all of the witnesses who testified before the grand jury were given to the defendants. The fact that they were not inserted or indorsed on the indictment is a mere technical noncompliance of no legal consequence. The defendants claim that they do not know whether the names given them in truth constitute the names of all of the witnesses before the grand jury. However, the evidence adequately supports the implied finding of the trial court that the witnesses whose testimony has been transcribed were all of the witnesses appearing before that body.

At and prior to the trial of this case the present provisions of section 938.1 of the Penal Code were a part of section 925 of that code. These provisions require the preparation of a transcript of the testimony given in a grand jury proceeding resulting in an indictment; direct completion thereof within not to exceed 30 days after return of the indictment; provide that a copy of this transcript shall be furnished the indicted

defendant; and, in the event a copy thereof is not furnished as directed, authorize the defendant to move for and the court to grant a continuance of the trial for such time as may be necessary to secure to him receipt of the same 10 days before trial. ▇ The object of these provisions is to enable the defendant to know the testimony upon which the charge against him is founded, and to make his defense. (*People* v. *Roberts*, 40 Cal.2d 483, 486 [254 P.2d 501]; *People* v. *Beitzel*, 207 Cal. 73, 79 [276 P. 1006]; *People* v. *Delhantie, supra,* 163 Cal. 461, 465; *People* v. *Pipes,* 179 Cal.App.2d 547, 555 [3 Cal.Rptr. 814].) ▇ Noncompliance therewith does not affect the validity of the indictment or the jurisdiction of the court to proceed thereunder. (*People* v. *Delhantie, supra,* 163 Cal. 461, 465.) The time element prescription is merely directory (*People* v. *Delhantie, supra,* 163 Cal. 461, 465; *People* v. *Buckley,* 143 Cal. 375, 381 [77 P. 169]), as appears from the code section itself which authorizes a continuance of the trial in the event of noncompliance. ▇ The defendants' motions for dismissal properly were denied. Their motion for a mistrial involved a matter subject to the discretion of the trial court; the fact that a full transcript was not furnished to them until after the trial had commenced did not require the granting of that motion; the order denying the same was not error. The court allowed them the continuance asked for and offered to have a prior witness recalled for further examination. No request for a further continuance was made. Unless noncompliance with the statute prejudiced the defendants they are not entitled to urge a reversal of the judgment on account thereof (*People* v. *Pipes, supra,* 179 Cal.App.2d 547, 555; *People* v. *Agnew,* 77 Cal.App.2d 748, 758 [176 P.2d 724]; *People* v. *Cowen, supra,* 41 Cal. App.2d 824, 827); they had ample time to prepare any further defense which the supplemental transcript may have indicated was in order; there is no showing of any prejudice to them arising out of the delay; and the failure to comply with the prescribed time requirement, under the circumstances, was harmless. (*People* v. *Pipes, supra,* 179 Cal.App. 2d 547, 555; *People* v. *Agnew, supra,* 77 Cal.App.2d 748, 758; *People* v. *Cowen, supra,* 41 Cal.App.2d 824, 827.)

The defendants claim that their motion for a mistrial should have been granted in order to enable them to move to set aside the indictment under Penal Code, section 995, for lack of probable cause. This contention is without merit for two reasons: (1) the evidence in the transcript, considering both

the original and the supplemental portions thereof, which is before us and which we have reviewed, establishes probable cause; and (2) the evidence presented to the trial court shows probable cause and adequately supports the judgment. (*People* v. *Wilson*, 25 Cal.2d 341, 351 [153 P.2d 720]; *People* v. *Bentley*, 154 Cal.App.2d 132, 133 [315 P.2d 730].)

There is no showing that the failure to obtain the names of all the witnesses appearing before the grand jury or a transcript of their testimony until after the trial had commenced prejudiced the defense in this case in any way; due time for preparation was allowable and, for aught that appears from the record, was allowed by motion for a continuance; only four actual trial days had gone by before the required information had been given, whereas seven weeks transpired before the presentation of evidence was concluded and an additional 12 days passed before arguments were completed and the court rendered its decision; also the remarks of counsel for the defendants at the time he directed the court's attention to the incompleteness of the transcript indicated a prior knowledge of the matters about which he was complaining. The law is the protector but not the puppet of the accused. When the reason for a rule has been served, strict adherence to the manner and time of compliance is not blindly demanded. The action of the trial court in proceeding with the trial was proper.

## REASONABLE CAUSE FOR ARREST AND SEARCH

In late May 1958 Sergeant Curiale of the Santa Ana Police Department, received information from a known informant that bookmaking activities were being conducted in a tire shop in that city; this information was relayed to the police department and to the district attorney's office of Orange County; and thereupon the tire shop was placed under surveillance. An investigator for the district attorney named Oxandaboure appears to have been placed in charge of the ensuing investigation. The surveillance was conducted by a number of officers; one officer, Sergeant Boyd, maintained surveillance for at least 20 days; it was noted that the defendants Carella and Krausnick were at the tire shop almost daily but did not engage in any of the work, which was done by two other men; two additional men, whom the officers assumed to be and described as "runners," made frequent trips to and from the tire shop; on occasions, through the use of a telescope from a distant point, Carella was observed

to count out money which he would hand to one of the men described as a "runner" who then would leave and upon his return hand money to either Carella or Krausnick.

From various hearsay sources the investigator for the district attorney learned that a man by the name of Ed or Eddie was making book; that Ed did not take bets himself but that a bartender at a local bar would give him Ed's telephone number; and that one of the men heretofore referred to as having been seen at the tire shop was working as a "runner" for Ed Krausnick, one of the defendants herein, and was picking up bets at the bar in question.

A few years before this time the investigator had received information from an undersheriff and a police officer that Krausnick was believed to be engaged in the bookmaking business. A lieutenant in the police department told the investigator that Krausnick was associated with persons who had been arrested for bookmaking and also that, from a check of the records, he believed Carella was so engaged. In 1957 Sergeant Curiale had been contacted by Carella who offered him money to find out about "some State men in town investigating bookmaking activities."

The defendant Buxton was seen at the tire shop on three occasions; she came and left in an Austin automobile which was not repaired; on one occasion she was trailed and went to the home of Carella; on another such occasion she went to the home of Krausnick; and her Austin automobile was seen at a residence which the officers, in their testimony, referred to as the "phone spot." The telephone at this residence was ascertained to be LIncoln 4-7367; it was registered under the name of "Edith Brown"; the Austin automobile seen at the tire shop and the residence was registered to Margery Buxton; the investigator for the district attorney had known the name Margery Buxton since 1957 when her Austin automobile was seen in front of a known bookmaker's home; this bookmaker, a woman, told another officer, who in turn told the investigator, that the defendant Buxton at one time had rented her telephone at $25 per week to make bets on horse racing over the telephone and that Buxton later worked for Carella and took bets over the telephone for him.

On July 3d, Sergeant Boyd, the officer who had been engaged in surveillance of the tire shop, upon direction of the investigator for the district attorney, called the "phone spot" residence using the telephone number given him by the investigator, i.e., LIncoln 4-7367; a woman's voice answered;

thereupon he gave such information as would indicate the placing of a horse racing bet and then telephoned his headquarters. Upon receipt of this information the investigator for the district attorney and other officers immediately went to the residence in question; knocked on the door and stated: "This is the police"; heard a noise inside as though someone were running; broke into the residence and saw the defendant Buxton closing the bathroom door and heard the toilet flush; when the defendant Buxton emerged from the bathroom her left arm was wet; the telephone was padded with foam rubber; next to it was a newspaper dated July 3d which was opened to the racing news section; there was no food in the house; and the closets were empty except for bits of paper and a housecoat. The defendant Buxton was placed under arrest.

A stenographer from the district attorney's office remained in the apartment for about three hours during which the telephone rang 45 times and many of the persons calling indicated their desire to place bets.

Immediately upon the arrest of Buxton the investigator for the district attorney, by telephone, advised other officers to raid the tire shop; the raid was conducted; the defendant Carella forthwith was placed under arrest for bookmaking, as was the defendant Krausnick when he arrived later. A search of the premises by several officers over a period of several hours thereafter took place. On one wall in the shop was a piece of paper bearing the "phone spot" telephone number and nothing else. Records taken into custody revealed the names of persons who were called as witnesses and testified to circumstances which support the conclusion that the defendants Carella and Krausnick had furnished them with a telephone number; that this was the number for the "phone spot" in question; that these defendants furnished the witnesses with code numbers to identify them when placing bets; and that they placed bets after calling this number.

The defendants Carella and Krausnick do not contest the sufficiency of the evidence to sustain their conviction but contend that there is no legal evidence upon which to base a finding of probable cause in support of their arrest and the search of their premises without a warrant; that the arrest and search were unlawful; and that the evidence produced thereby was inadmissible.

The defendants insist that the information which forms the basis for probable cause must be obtained by the person who makes the arrest or conducts the search; that informa-

tion gathered by one officer and given to another may not be relied upon for this purpose; that the reliability of the information given by an informer may be established only by the person who received that information; that the reliability of an informer is not established by the transmittal of his statements from one officer to another; and that only the testimony of the officer who obtained the information as distinguished from the officer who relied upon that information and made an arrest and search is admissible to prove reasonable cause.

A search made as an incident to a lawful arrest based on reasonable cause to believe that the person arrested has committed a felony, is a lawful search, even though made without a warrant. (*United States* v. *Rabinowitz*, 339 U.S. 56, 60 [70 S.Ct. 430, 94 L.Ed. 653]; *Agnello* v. *United States*, 269 U.S. 20 [46 S.Ct. 4, 70 L.Ed. 145, 51 A.L.R. 409]; *People* v. *Hammond*, 54 Cal.2d 846, 853 [9 Cal.Rptr. 233, 357 P.2d 289]; *People* v. *Ingle*, 53 Cal.2d 407, 413 [2 Cal.Rptr. 14, 348 P.2d 577]; *People* v. *Rios*, 46 Cal.2d 297, 299 [294 P.2d 39]; *Willson* v. *Superior Court*, 46 Cal.2d 291, 294 [294 P.2d 36].) The court and not the officer making the arrest and search determines whether the information upon which his belief was based constitutes reasonable cause therefor. (*People* v. *Fischer*, 49 Cal.2d 442, 446 [317 P.2d 967]; *People* v. *Boyles*, 45 Cal.2d 652, 656 [290 P.2d 535].) Upon this issue relevant evidence includes testimony concerning information "obtained from others" (*People* v. *Boyles, supra,* 45 Cal.2d 652, 656); information supplied by a reliable informer (*People* v. *Hammond, supra,* 54 Cal.2d 846, 853), as well as information supplied by an anonymous informer which is corroborated "by similar information from other sources or by the personal observations of the police" (*Willson* v. *Superior Court, supra,* 46 Cal.2d 291, 295; *People* v. *Prewitt*, 52 Cal.2d 330, 337 [341 P.2d 1]; *People* v. *Soto*, 144 Cal.App.2d 294, 299 [301 P.2d 45]); also information received through official channels (*People* v. *Fischer, supra,* 49 Cal.2d 442, 446; *Willson* v. *Superior Court, supra,* 46 Cal. 2d 291, 293-295; *People* v. *Hood*, 150 Cal.App.2d 197, 201 [309 P.2d 856]; *People* v. *Ames*, 151 Cal.App.2d 714, 722 [312 P.2d 111]; *People* v. *Gusukuna*, 152 Cal.App.2d 135, 137-138 [312 P.2d 714]); and "is not limited to evidence that would be admissible at the trial on the issue of guilt." (*People* v. *Boyles, supra,* 45 Cal.2d 652, 656.) It is not necessary that the information come directly to the officer

130

making the arrest (*People* v. *Gorg*, 157 Cal.App.2d 515, 520 [321 P.2d 143]; *People* v. *Ames, supra,* 151 Cal.App.2d 714, 722; *People* v. *Hood, supra,* 150 Cal.App.2d 197, 201); it may be obtained from a variety of sources (*Arata* v. *Superior Court,* 153 Cal.App.2d 767, 775 [315 P.2d 473]); and through a variety of channels. (*Willson* v. *Superior Court, supra,* 46 Cal.2d 291, 293; *People* v. *Gorg, supra,* 157 Cal.App.2d 515, 520; *Arata* v. *Superior Court, supra,* 153 Cal.App.2d 767, 775.) ▆▆ The information thus related is hearsay as to the facts stated but evidence of the receipt or possession of such information is evidence of a fact which is admissible as proof of reasonable cause. (*People* v. *Fischer, supra,* 49 Cal.2d 442, 446; *People* v. *Ames, supra,* 151 Cal. App.2d 714, 723; *People* v. *Easley,* 148 Cal.App.2d 565, 568 [307 P.2d 10].)

▆▆ A contention identical to that raised by the defendants herein, who claim that the information relied upon by the officers as a basis for reasonable cause constitutes hearsay upon hearsay and that evidence thereof is inadmissible, was urged upon and rejected by the court in *People* v. *Gorg, supra,* 157 Cal.App.2d 515, 520. The contention is without merit.

▆▆ Reasonable or probable cause for an arrest exists upon the showing of "circumstances sufficiently strong to warrant a reasonable man in the belief that the charge is true." (*People* v. *Brite,* 9 Cal.2d 666, 687 [72 P.2d 122]; *People* v. *Ingle, supra,* 53 Cal.2d 407, 412; *Bompensiero* v. *Superior Court,* 44 Cal.2d 178, 183 [281 P.2d 250].)

▆▆ The evidence in the case at bar adequately supports the conclusion of the trial court that the officers had reasonable cause to believe that the defendants had committed a felony, i.e., the various bookmaking offenses with which they eventually were charged. From reliable sources it had been learned that the defendant Buxton had operated and was operating a "phone spot" and that she had associated with an admitted bookmaker; she was seen at the tire shop on a number of occasions and had been followed to the homes of the other defendants; the actions of the defendants Carella and Krausnick, while at the tire shop during the time it was under surveillance, justified a strong suspicion that they were engaged in bookmaking; officers also were informed that bets might be placed with these defendants by telephone; the telephone at the "phone spot" was under an assumed name; an officer called and placed a bet over this telephone which

was received by a person with a female voice; and when the officers made their presence known at the Buxton apartment they heard scurrying sounds from within. This information sufficiently supports a reasonable belief that all of the defendants were engaged in bookmaking activities . (*Willson* v. *Superior Court, supra,* 46 Cal.2d 291, 294-296; *People* v. *Schmidt,* 178 Cal.App.2d 865, 869 [3 Cal.Rptr. 438]; *People* v. *Sakelaris,* 154 Cal.App.2d 244, 248 [315 P.2d 902]; *People* v. *Gusukuna, supra,* 152 Cal.App.2d 135, 137; *People* v. *Hudak,* 149 Cal.App.2d 88, 92 [307 P.2d 942].) Further cause for belief that the defendants Carella and Krausnick were participants in a bookmaking conspiracy with the defendant Buxton was furnished by the appearance of the "phone spot" residence, i.e., the fact that the premises were not used as living quarters; the newspaper race track record found near the telephone; and the obviously successful effort of the defendant Buxton to dispose of something down the toilet when the police arrived. (*People* v. *Easley, supra,* 148 Cal.App.2d 565, 568.)

The contention of the defendant Buxton that the telephone bet placing incident was not grounds to arrest her because the arrest occurred 15 minutes after the telephone call had been completed and the owner of the female voice answering the call could have left the residence in the meantime is without merit. The telephone call was made to the residence in question; a female voice answered; the automobile of the defendant Buxton had been seen at this residence a number of times; it was the same automobile that had been seen at the tire shop; and information from other sources indicated that she was operating a "phone spot." This information was corroborated by the actions of the person inside the premises who did not go to the door when the police identified themselves but hurried into the bathroom and flushed the toilet.

In determining the issue of probable cause only the information possessed by the officer at the time he was required to act will be considered (*People* v. *Murphy,* 173 Cal. App.2d 367, 377 [343 P.2d 273]; *People* v. *Wiley,* 162 Cal. App.2d 836, 838 [328 P.2d 823]), and the weight to be given that information is a matter resting within the sound discretion of the trial court. (*Lorenzen* v. *Superior Court,* 150 Cal.App.2d 506, 510 [310 P.2d 180].) The evidence at bar fully supports the implied finding of the court that an arrest without a warrant was authorized in this case.

### UNREASONABLE MANNER OF SEARCH

The defendants claim that the period of time consumed in searching their premises and the manner in which the search was conducted classified it as unreasonable, exploratory and general, rendering the evidence obtained thereby inadmissible.

The officers occupied the tire shop and the "phone spot" for several hours. The defendants claim that the places were ransacked. With less emotion, the investigation may be described as very thorough. It appears that many of the articles seized were not offered in evidence. Those offered and admitted generally may be described as racing forms; "owe sheets"; "betting markers"; and a paper bearing the "phone spot" telephone number, i.e., LIncoln 4-7367. The officers making the search testified that they were looking for evidence of bookmaking. The exhibits in question constituted such evidence. The search and seizure thereof were proper as an incident to the arrest. (*In re Dixon,* 41 Cal.2d 756, 761-762 [264 P.2d 513]; *People* v. *Coleman,* 134 Cal.App.2d 594, 599 [286 P.2d 582].) Some of these exhibits were in plain sight and no valid contention can be made that any ransacking or general search was involved in their taking. (*Marron* v. *United States,* 275 U.S. 192, 198 [48 S.Ct. 74, 72 L.Ed. 231]; *People* v. *Roberts,* 47 Cal.2d 374, 379 [303 P.2d 721]; *People* v. *Cahill,* 163 Cal.App.2d 15, 20 [328 P.2d 995]; *People* v. *Littlejohn,* 148 Cal.App.2d 786, 791 [307 P.2d 425].) Others of these exhibits were retrieved from trash barrels in the rear of the premises but were well within the area of reasonable search. (*People* v. *Cisneros,* 166 Cal.App.2d 100, 102 [332 P.2d 376]; *People* v. *Smith,* 166 Cal.App.2d 302, 305 [333 P.2d 208]; *People* v. *Guy,* 145 Cal.App.2d 481, 489 [302 P.2d 657]; *Trowbridge* v. *Superior Court,* 144 Cal.App.2d 13, 18 [300 P.2d 222].) The trial court was entitled to conclude that the officers were searching for evidence in support of the crime for which they arrested the defendants; that they were not searching for proof to establish that the defendants had committed other crimes; and that the search was not general or exploratory.

The defendants rely upon the decision in *People* v. *Mills,* 148 Cal.App.2d 392, 402 [306 P.2d 1005] in support of their position. However, the situation in that case is clearly distinguishable from the one at bar. In the cited case the defendant was arrested for one offense; incident to this arrest a search was made; the search uncovered evidence in proof

of the offense for which the defendant was arrested and also in proof of 12 other offenses; in this regard it was an exploratory search; and the court held that the evidence obtained by the search in support of the one offense was admissible but the evidence in support of the 12 other offenses was not admissible. In the case at bar the only evidence obtained through the search which was admitted was evidence in proof of the offense for which the defendants were arrested. The ruling in the Mills case (*People* v. *Mills, supra,* 148 Cal.App.2d 392) does not foreclose the admission of evidence obtained in a search incident to an arrest in proof of the offense for which the arrest was made.

 Among other articles taken from the tire shop was a general ledger which, it developed, contained the names of people who had placed bets with the defendants, including the names of three witnesses called by the prosecution. It is contended that the testimony of these three witnesses is inadmissible because their names were obtained from a ledger which was seized during the search; that the search was unlawful; and that information thus acquired could not be used against the defendants. This contention is based upon the proposition that neither the evidence seized during or any derivative of an unlawful search may be used against a defendant. (*Silverthorne Lbr. Co.* v. *United States,* 251 U.S. 385, 392 [40 S.Ct. 182, 64 L.Ed. 319, 24 A.L.R. 426]; *People* v. *Berger,* 44 Cal.2d 459, 462 [282 P.2d 509]; *People* v. *Mills, supra,* 148 Cal.App.2d 392, 402.) On the other hand, a search made as an incident to a lawful arrest "may be exercised in aid of discovery of evidence of the particular crime for which the arrest is made." (*People* v. *Mills, supra,* 148 Cal.App.2d 392, 401.) The testimony of the three witnesses was admitted in proof of the offenses for which the defendants were arrested. Therefore, seizure of the ledger from which their names were taken was proper. Furthermore, the ledger properly was seized as evidence that the defendants on the day they were arrested were engaged in bookmaking and were keeping or occupying a building with a book, paper, apparatus, device or paraphernalia for the purpose of recording or registering bets. The fact, if it be a fact, that the ledger also was proof of other crimes committed by the defendants, did not render its use for the purpose of discovering evidence unlawful.

 The fact that evidence uncovered by a search is proof not only of the crime for which the accused is arrested but also of other crimes, does not establish that the search was

illegal or render the evidence inadmissible. (*People* v. *Jablon,* 153 Cal.App.2d 456, 461 [314 P.2d 824].)

The orders of the trial court respecting the admission of testimony to prove reasonable cause as a basis for the arrest of the defendants without a warrant were proper. Its implied findings that such cause existed; that the ensuing search of the defendants' premises was made as an incident to their arrest; and that the search was reasonable are supported by the evidence and the law. Its admission of the evidence obtained in the course of such search, including the testimony of witnesses whose identity was learned through that search, was not error.

### INSPECTION OF RECORDS

During the trial a record of the notes made by Sergeant Boyd in the course of his investigation, the notes of Investigator Oxandaboure respecting his observations during the time he had the tire shop under surveillance, and a report compiled at the direction of Investigator Oxandaboure respecting some of the automobiles seen at the tire shop, were produced and inspected by the defendants. The defendants made requests respecting other alleged reports which either were not acted upon or were denied by the court. It is contended that this action constituted error.

The defendants' requests were based on the rule as stated in *People* v. *Chapman,* 52 Cal.2d 95, 98 [338 P.2d 428] that: "The defendant in a criminal case can on a proper showing compel production of documents in the possession of the People which are relevant and material to the defense, and this rule has been applied to written statements of prosecution witnesses relating to the subject matter of their testimony where the statements were sought by the defense for purposes of impeachment."

The witness Oxandaboure was examined concerning certain notes and reports; testified that the notes produced, which concerned his surveillance of the tire shop, were all of the notes he had pertaining to his observations; that the information contained on the statements respecting the appearance of certain automobiles at the tire shop during the course of the investigation came from both oral and written reports of other officers and was used as a work sheet for the purpose of checking on the activities of certain automobiles; that he received both oral and written reports about the investigation which was being conducted; and that there "may be" some reports besides those theretofore produced. After considerable

interrogation, counsel for the defendants made this statement: "I am going to request that you furnish those additional reports." This request was so general that it should have been denied. The "additional reports" referred to in the testimony included oral as well as written reports and the proof does not relate the actual existence of any additional written reports. Thereafter, the defendants requested that the witness be instructed to check to determine whether there were other records which would show the presence of cars at the tire shop during the period of surveillance, other than those shown on the work sheets which had been produced. The court denied the request, basing its denial upon the ground that it was not probable that any evidence thus produced would be at variance with other testimony theretofore introduced. It should be noted that the request did not involve any notes or records that the witness had made. In substance, he was asked to look for some records which would show the presence of other cars at the tire shop. It is claimed that such evidence is material to the defendants' case because the work sheet did not show the presence of the Buxton automobile at that place. In view of the witness' testimony that information concerning the presence of automobiles at the tire shop had been obtained from both oral and written reports, obviously any record which the requested search might have turned up could not have disproved any previous testimony showing the receipt of oral reports respecting that automobile. Such records, if existent, at the most could have shown only the absence of any written reports establishing the presence of the Buxton automobile at that shop. No prejudice from the ruling appears.

 Sergeant Curiale testified that he made a written report respecting his conversation with the informant whose statement about suspected bookmaking initiated the investigation of the tire shop activities. A request that this report be produced was taken under submission and the witness was ordered to make himself available if the court should require the production of this evidence. Nothing further appears in the record concerning this request. The fact that the defendants did not subsequently call the matter to the court's attention is proof that it was of little consequence. Evidence of this informer's statement was primarily of a preliminary nature; it showed the reason for instigating an investigation; as support for a finding of probable cause, it presented

little weight; by comparison with other evidence on that issue it was inconsequential. No prejudicial error occurred.

Subsequently, Sergeant Curiale was recalled for further examination. Nothing was said about the foregoing report. However, his examination at this time revealed that he had received reports from Sergeant Boyd and Investigator Oxandaboure; some of the reports were written and others were oral; the written reports from Boyd usually were written at the district attorney's office and "copies" were forwarded to him; the reports from Oxandaboure were oral and were relayed over the telephone. Defendants' counsel objected to a question asked the witness concerning the contents of these reports, and the objection was sustained on the ground that it was not clear whether the question referred to oral or written reports. Thereupon the witness testified respecting the receipt of oral reports from Boyd and Oxandaboure which, in substance, related the incidents observed by them in the course of their surveillance of the tire shop. During his cross-examination, in response to a leading question asked him by defense counsel, the witness replied affirmatively to an inquiry as to whether reports "filed" by "Mr. Boyd" and "Mr. Baird" were available; and when asked if "those files" covered reports from anyone else replied: "From Mr. Oxandaboure, as I recall." Previously the witness had not referred to any reports from Mr. Baird. Thereupon counsel requested the court to order the witness to produce the reports "which he claimed he received from Mr. Boyd and Mr. Baird and Mr. Oxandaboure, as I think they may be relevant on the question of reasonable cause." The court denied the motion upon the ground that the information the witness received and upon which he relied in arresting the defendants was obtained from oral reports and not from any written reports. Although an inquiry respecting the contents of written reports which concern the subject matter of a witness' testimony and to which he has access may be permissible on cross-examination, and a request to produce such reports should be granted for this purpose (*Jencks* v. *United States*, 353 U.S. 657, 665 [77 S.Ct. 1007, 1 L.Ed.2d 1103]; *People* v. *Chapman, supra*, 52 Cal.2d 95, 98), a proper showing to justify production should be made. (*People* v. *Chapman, supra*, 52 Cal.2d 95, 98; *People* v. *Riser*, 47 Cal.2d 566, 586 [305 P.2d 1]; *People* v. *Bermijo*, 2 Cal.2d 270, 276 [40 P.2d 823].) The subject request that the witness produce all the reports which he claimed he received was

too general to form the basis for an appropriate order in the premises. Undoubtedly Oxandaboure, as the investigator in charge, must have filed a number of reports with the police department, but this fact did not entitle the defendants to an exposé of any and all information contained therein with the hope that something relevant to their defense might thus turn up. Who Mr. Baird was, and to what his report might have related nowhere appeared. No attempt was made to show that the copies of reports by Boyd, to which the witness referred, did not cover the subject matter of the reports theretofore produced. The examination preceding the request to produce should have been sufficiently specific to indicate that the required reports referred at least in a general way to the events and incidents related in the testimony presented to the court. (*Jencks* v. *United States, supra,* 353 U.S. 657, 666.) Moreover, any error in refusing this request was not prejudicial to the defendants' case and therefore is not reversible. (*People* v. *Riser, supra,* 47 Cal.2d 566, 588.) The request to produce was based on the ground that the reports "may be relevant on the question of probable cause"; the trial court observed that the information relied upon by Sergeant Curiale was obtained from oral and not written reports; and it is apparent, therefore, that any evidence supplied by any written reports would not have influenced the ultimate decision of that court on the issue of probable cause.

We have reviewed the record, including the evidence, and conclude that the defendants sustained no prejudice as a result of any alleged error in refusing any of the foregoing requests.

### ADMISSION OF EVIDENCE RE COMMUNICATIONS OVER BUXTON TELEPHONE

 The stenographer who remained in the Buxton apartment after Buxton's arrest answered approximately 45 telephone calls and recorded in shorthand the ensuing conversations. A transcript of these conversations was admitted in evidence. The defendants contend that the receipt of the messages by the stenographer constituted an interception of communications intended for the defendant Buxton and was violative of the Federal Communications Act (47 U.S.C.A., § 605) as well as section 640 of the Penal Code, and that the evidence thus obtained was inadmissible. Both of these statutes are concerned with the interception of telephone messages. No interception occurred in the instant case; no

138

wire tapping or other connecting method was used; the messages sent were received in the ordinary course over the means of transmission provided. The fact that someone other than the intended recipient answers a telephone and receives the message transmitted does not establish a violation of the Federal Communications Act or section 640 of the Penal Code. As to the former statute, the United States Supreme Court said in *Goldman* v. *United States,* 316 U.S. 129, 133 [62 S.Ct. 993, 86 L.Ed. 1322] : "The protection intended and afforded by the statute is of the means of communication and not of the secrecy of the conversation."

There was no interference with the means of communication in the case at bar. Furthermore, the federal act protects only the sender and not the intended recipient of a telephone message. For this reason, an intended recipient may not object to the divulgence of messages intended for him but received by another person. (*People* v. *Kelley,* 22 Cal.2d 169, 174 [137 P.2d 1] ; *People* v. *Miller,* 146 Cal.App.2d 444, 449 [304 P.2d 208].) The prohibition prescribed by Penal Code, section 640, is limited to the taking or making of an unauthorized connection with a telephone wire or instrument, or to the obtaining of the contents of a telephone message "while the same is in transit or passing over any . . . telephone." The present case does not present a situation violative of these provisions.

In many instances when the stenographer answered a phone call the sender asked, "Is this Lincoln 4-7367," and then made the betting request; in others, the caller asked for "Jerry" and was told that "Jerry" was sick and that "I'm sitting in for her," and thereupon the caller made the betting request; and in other instances the calling party merely gave a code number and made the betting request. In each instance the sender intended to give a message to the person who actually answered the telephone; in some instances, because no inquiry was made to ascertain the identity of the person answering, it must be concluded that the sender intended to give the message to whoever answered the call, while in others, although the original intent was to communicate with "Jerry," when it was determined that she was not present, the message was given to the stenographer. In either event there was no interception. (*Billeci* v. *United States,* 184 F.2d 394, 396 ; cf. *United States* v. *Yee Ping Jong,* 26 F.Supp. 69, 70.) The foregoing recital shows that the messages were not intended exclusively for the defendant

Buxton; any contention to the contrary is not factually sound. ▮▮▮ The fact that a form of deception was used in obtaining the messages did not render the evidence respecting them inadmissible under the circumstances of this case. (*People* v. *Malotte*, 46 Cal.2d 59, 60-65 [292 P.2d 517]; *People* v. *Lawrence*, 149 Cal.App.2d 435, 439-443 [308 P.2d 821].) There were no statutory violations as claimed.

### Admissibility of Telephone Evidence

Evidence of the telephone conversation between the stenographer and persons calling into the premises to place bets was admissible to prove the purpose for which the premises were being used. (*People* v. *Fischer*, 49 Cal.2d 442, 447 [317 P.2d 967]; *People* v. *Vertlieb*, 22 Cal.2d 193, 196 [137 P.2d 437]; *People* v. *Kelley*, *supra*, 22 Cal.2d 169, 176; *People* v. *Miller*, *supra*, 146 Cal.App.2d 444, 449; *People* v. *King*, 140 Cal.App.2d 1, 9 [294 P.2d 972]; *People* v. *Cohn*, 94 Cal.App.2d 630, 637 [211 P.2d 375]; *People* v. *Onofrio*, 65 Cal.App.2d 584, 590 [151 P.2d 158]; *People* v. *Joffe*, 45 Cal.App.2d 233, 235 [113 P.2d 901]; *People* v. *Reifenstuhl*, 37 Cal.App.2d 402, 405 [99 P.2d 564].) The defendants' objections to the admission of this testimony properly were overruled.

▮▮▮ The defendant Buxton contends, however, that even if the telephone conversations were admissible to prove the use being made of the premises where the telephone was located, they were not admissible to show her participation in the alleged conspiracy. In this regard attention is directed to the observations of the trial judge in the course of his summation of the evidence respecting the similarity in names and numbers given in the telephone conversations and the names and numbers found in the ''owe sheets'' taken from the tire shop. Many of these sheets were in the handwriting of either Carella or Krausnick. It is contended that in making these comparisons the trial judge accepted the truth of the matters stated in the telephone conversations and in doing so based his decision on hearsay testimony; that there is no other evidence to support the conspiracy against the defendant Buxton; and, for this reason, the judgment as to her must be reversed.

The evidence of telephone conversations to which objection is made is direct proof of the fact that these conversations were received over the telephone in the Buxton apartment. It is not hearsay. (*Rogers* v. *Superior Court*, 46 Cal.2d 3, 8

[291 P.2d 929]; *People* v. *Henry,* 86 Cal.App.2d 785, 789 [195 P.2d 478]; *People* v. *Gaertner,* 43 Cal.App.2d 388, 394-395 [110 P.2d 1002].) On the other hand, such evidence is not direct proof of the truth of the statements made over the telephone. Its use for such purpose is foreclosed by the hearsay rule. However, the evidence in question was not used as proof of the truth of the statements made. The court was entitled to find that messages were transmitted over the telephone at the "phone spot" which purported to identify the callers by names or numbers; to relate that finding to the contents of the "owe sheets" obtained from the tire shop showing similar names and numbers; and to consider this as a circumstance bearing on the issue whether the activities at the "phone spot" were related to the activities at the tire shop. The evidence objected to was not competent proof that the persons who made the telephone calls actually were the persons identified by the names or numbers given in the ensuing conversations. The use which the court made of this evidence was within the limitations imposed by the hearsay rule; it was not used to establish that the persons who telephoned the Buxton apartment were the persons identified in the tire shop records by names or numbers; instead, its use was limited to a consideration of the circumstances that the names and numbers received over the telephone were similar to the names and numbers observed in those records. In those instances where telephone conversations are admitted as proof of the purpose for which the telephone and premises wherein it is located are being used, the character of these conversations can be determined only by a consideration of their contents even though the conversations are not proof of the truth of their contents. The rationale of the cases approving the admission of such conversations for the aforesaid purpose supports the use which the trial court made of them in the instant case.

 Contrary to the contention of the defendants, there is evidence in the record in addition to the foregoing circumstances which connect the "phone spot" with the tire shop operation; the telephone number of the telephone at the Buxton apartment appeared on a piece of paper on the wall at the tire shop; no name or other identifying legend appeared thereon; it is apparent that only those acquainted with the bookmaking operations knew the significance of this number. The witnesses who had placed bets at the instance of the defendants Carella and Krausnick were given a "phone

spot" number with the prefix "LI"; they called this number and a female voice answered; they also were given a code number which they gave the "phone spot" operator and this number appeared on the "owe sheets" found at the tire shop; the Austin automobile which was registered to Buxton was seen at the tire shop, although it was receiving no tire services, and also was seen at the "phone spot"; Buxton was seen at the home of Carella and also at the home of Krausnick; there is direct testimony that she rented the "phone spot" apartment under a fictitious name, i.e., Edith Brown, and caused the phone to be installed therein under that name although she did not use the premises as a residence; and from the occurrences taking place when the officers appeared at her apartment, it may be inferred that she disposed of incriminating evidence. None of the defendants testified, and the trial court was entitled to conclude that among the inferences reasonably to be drawn from the evidence, those unfavorable to the defendants were the more probable. (*People* v. *Steccone,* 36 Cal.2d 234, 239 [223 P.2d 17]; *People* v. *Adamson,* 27 Cal.2d 478, 490 [165 P.2d 3].) The evidence adequately supports the conclusion of the trial court that the defendant Buxton was a participant in the conspiracy alleged in the indictment.

### FAILURE TO EXCLUDE PERSONS FROM COURTROOM

At the commencement of trial counsel for the defendants moved that "all of the officers be excluded, or all witnesses be excluded from the courtroom until such time as they are called upon to testify." The court granted the motion except as to one "advisory officer to the District Attorney" who was permitted to remain. The defendants contend that the failure to exclude "all persons" from the courtroom was error, citing *People* v. *Elliott,* 54 Cal.2d 498 [6 Cal.Rptr. 753, 354 P.2d 225] and *People* v. *Prizant,* 186 Cal.App.2d 542 [9 Cal.Rptr. 282] in support of their contention.

In their brief the defendants refer to the subject motion as one made pursuant to the provisions of section 868 of the Penal Code. That section governs only preliminary hearings before a magistrate. The proceedings under review in the cited cases were preliminary hearings which involved an application of the aforesaid code provision. The case at bar is not governed by section 868 of the Penal Code but by section 2043 of the Code of Civil Procedure which confers a

discretionary authority upon the court to exclude witnesses from a courtroom during the course of a trial. (*People* v. *Lariscy,* 14 Cal.2d 30, 32 [92 P.2d 638]; *People* v. *Cryder,* 90 Cal.App.2d 194, 204 [202 P.2d 765].) In the exercise of that discretion the court may grant a motion to exclude witnesses but permit certain of them to remain. (*People* v. *Nunley,* 142 Cal. 441, 445 [76 P. 45]; *People* v. *McCarty,* 117 Cal. 65 [48 P. 984]; *People* v. *Persky,* 167 Cal.App.2d 134, 139 [334 P.2d 219]; *People* v. *Chapman,* 93 Cal.App.2d 365, 373 [209 P.2d 121]; *Gordon* v. *McGaslin,* 61 Cal.App.2d 540, 543 [143 P.2d 359]; *People* v. *McClure,* 117 Cal.App. 381, 385 [4 P.2d 211]; *People* v. *Kasparoff,* 94 Cal.App. 7, 12 [270 P. 398]; *People* v. *Halbert,* 78 Cal.App. 598, 613 [248 P. 969].) The defendants made no objection to the order permitting an advisor to the district attorney to remain in the courtroom. There is no showing of an abuse of discretion. No error appears.

The record before us indicates that the trial judge gave serious, conscientious, and patient consideration to the many objections and contentions made on behalf of the defendants, and the extensive arguments presented in connection therewith on many occasions during the course of the trial, and in every manner extended them the protection afforded by law. They had a fair trial.

The judgment and the order denying the defendants' motion for a new trial are affirmed.

Griffin, P. J., and Shepard, J., concurred.

A petition for a rehearing was denied May 9, 1961, and appellants' petition for a hearing by the Supreme Court was denied June 6, 1961.